**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:20-cv-21107-SCOLA**

| | | |
|---|---|---|
| **ERIC DOUGLAS, Individually and On Behalf of All Others Similarly Situated,** | ) ) ) | **CLASS ACTION** |
| **Plaintiff,** | ) ) | |
| vs. | ) ) | |
| **NORWEGIAN CRUISE LINES, FRANK J. DEL RIO, and MARK A. KEMPA,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

**Case No. 1:20-cv-21685-MARTINEZ**

| | | |
|---|---|---|
| **ANGEL BANUELOS, Individually and On Behalf of All Others Similarly Situated,** | ) ) | **CLASS ACTION** |
| **Plaintiffs,** | ) | |
| vs. | ) ) | |
| **NORWEGIAN CRUISE LINES, FRANK J. DEL RIO, and MARK A. KEMPA,** | ) ) ) | |
| **Defendants.** | ) ) ) ) | |

**DAT N. LE'S MOTION TO CONSOLIDATE RELATED ACTIONS,**
**APPOINT DAT N. LE AS LEAD PLAINTIFF,**
**AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

## TABLE OF CONTENTS

**Page:**

MEMORANDUM IN SUPPORT................................................................................. 2

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

ARGUMENT ........................................................................................................ 5

I.        THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS ......................... 5

II.       MR. LE IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT
SHOULD APPOINT HIM LEAD PLAINTIFF ................................................................. 7

        A.     Mr. Le Filed a Timely and Procedurally Complete Motion for Lead Plaintiff
................................................................................................................. 11

        B.     Mr. Le Has the Largest Known Financial Interest in the Relief Sought....... 12

        C.     Mr. Le "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23 .... 13

               1.     Mr. Le's Claims Are Typical of the Claims of All the Class Members
................................................................................................. 13

               2.     Mr. Le Will Adequately Represent the Class ................................. 15

III.      THE COURT SHOULD APPROVE MR. LE'S CHOICE OF LEAD COUNSEL ........... 16

CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s):**

*Biver v. Nicholas Fin., Inc.*,
No. 14-250, 2014 U.S. Dist. LEXIS 60019
(M.D. Fla. Apr. 30, 2014) ...................................................................................................... 14

*City Pension Fund v. Aracruz*,
No. 08-23317, 2009 U.S. Dist. LEXIS 140999
(S.D. Fla. Aug. 7, 2009) ................................................................................................... 8, 10

*Daniels v. City of N.Y.*,
198 F.R.D. 409 (S.D.N.Y. 2001) ........................................................................................ 14

*Einhorn v. Axogen, Inc.*,
No. 19-69, 2019 U.S. Dist. LEXIS 195312
(M.D. Fla. Apr. 30, 2019) .................................................................................8, 10-11, 13-14

*Ferrari v. Impath*,
No. 03-5667, 2004 U.S. Dist. LEXIS 13898
(S.D.N.Y. July 15, 2004)...................................................................................................... 14

*Grand Lodge of Pa. v. Peters*,
No. 07-479, 2007 U.S. Dist. LEXIS 48191
(M.D. Fla. June 22, 2007) ...................................................................................................... 6

*Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*,
306 F.3d 726 (9th Cir. 2002)........................................................................................*passim*

*Hill v. Accentia Biopharmaceuticals, Inc.*,
No. 13-1945, 2013 U.S. Dist. LEXIS 170982
(M.D. Fla. Dec. 4, 2013) ........................................................................................................ 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................*passim*

*In re Faro Techs. Sec. Litig.*,
No. 05-1810, 2006 U.S. Dist. LEXIS 23500
(M.D. Fla. Apr. 26, 2006) ...................................................................................................... 8

*In re Heritage Bond Litig.*,
MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386
(C.D. Cal. July 12, 2004) ...................................................................................................... 14

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998)........................................................................................ 6

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................................. 11

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) ................................................................................. 6

*McIlvaine v. Arthrocare Corp.*,
   No. 08-80343, 2008 U.S. Dist. LEXIS 130944 (S.D. Fla. July 16, 2008) ...................................... 12

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) .................................................................................... 6

*Piven v. Sykes Enters.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ......................................................................... 7, 9

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997). .................................................................................. 6

**Statutes**

   15 U.S.C. § 78 ................................................................................................. *passim*

**Rules**

   Fed. R. Civ. P. 6 ..................................................................................................12

   Fed. R. Civ. P. 23 ............................................................................................. 7-16

   Fed. R. Civ. P. 42 ............................................................................................. 6-7

**Other**

   Wright & Miller, *Consolidation—Discretion of Court*,
   9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ...............................................................6

Dat N. Le ("Mr. Le" or "Movant"), by and through his undersigned counsel, will and does hereby move this Court, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the entry of an Order: (1) consolidating the related actions filed against Norwegian Cruise Line Holdings Ltd. ("Norwegian" or the "Company") and certain related Defendants (defined below);[1] (2) appointing Movant as Lead Plaintiff in this action; and (3) approving Movant's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and George Gesten McDonald, PLLC ("GGM") as Liaison Counsel for the litigation.

In support of this Motion, Movant submits the following Memorandum in Support and the Declaration of David J. George in Support of Dat N. Le's Motion to Consolidate Related Actions, Appoint Dat N. Le as Lead Plaintiff, and Approve Proposed Lead Plaintiff's Choice of Counsel, and Exhibits thereto, attached as Exhibit A ("George Decl." or "George Declaration"). As set forth herein, consolidation of the above-captioned actions is appropriate, the procedural requirements of the PSLRA have been satisfied, and Mr. Le is the presumptive most adequate plaintiff and further satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.

Movant further requests that the Court approve the selection of his counsel, KSF, as Lead Counsel for the Class. KSF is a nationally-recognized law firm with significant class action, fraud, and complex litigation experience and the resources to effectively and properly

---

[1]    The related securities class actions are *Eric Douglas v. Norwegian Cruise Lines, et al.*, No. 1:20-cv-21107 (S.D. Fla.), filed on March 12, 2020 ("*Douglas* Action"), *Abraham Atachbarian v. Norwegian Cruise Lines, et al.*, No. 1:20-cv-21386 (S.D. Fla.) ("*Atachbarian* Action"), filed on March 21, 2020, and *Angel Banuelos v. Norwegian Cruise Lines, et al.*, No. 1:20-cv-21685 (S.D. Fla.), filed on April 22, 2020 ("*Banuelos* Action"). On April 10, 2020, the *Atachbarian* Action was consolidated with the *Douglas* Action.

1

pursue this action. Similarly, Movant requests that the Court approve the selection of GGM as Liaison Counsel for the litigation. GGM has extensive experience in securities and consumer class actions and other business and class action litigation.

Wherefore, for all of the reasons set forth herein and in the George Declaration submitted herewith, Movant respectfully requests that this Court: (1) consolidate the related actions filed against Norwegian; (2) appoint Movant as Lead Plaintiff; (3) approve Movant's selection of KSF as Lead Counsel and GGM as Liaison Counsel for the litigation; and (4) grant such other and further relief as the Court may deem just and proper.

## <u>MEMORANDUM IN SUPPORT</u>

As further outlined herein, Mr. Le has suffered substantial losses in connection with his acquisitions of Norwegian securities from February 20, 2020 through March 12, 2020, inclusive (the "Class Period"). *See* George Decl., Exs. 1-2 (Dat N. Le Certification and Loss Chart). ***Specifically, Mr. Le has suffered approximately $86,969.74 in losses as a result of his transactions in Norwegian stock during the Class Period.*** To the best of his knowledge, Mr. Le has sustained the largest loss of any movant seeking to be appointed Lead Plaintiff.

What is more, as further outlined in Mr. Le's Certification, he fully understands his duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action. *See* George Decl., Ex. 1. Finally, Mr. Le satisfies the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is therefore presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Accordingly, Mr. Le respectfully requests that the Court (1) consolidate all related

actions; (2) appoint Mr. Le as Lead Plaintiff; and (3) approve Mr. Le's choice of KSF as Lead Counsel and GGM as Liaison Counsel for the Class; and (4) grant such other further relief as the Court may deem just and proper.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant Norwegian is a global cruise company that trades on the New York Stock Exchange ("NYSE") under the ticker symbol "NCLH." Its cruise lines include the Norwegian Cruise Line, Oceania Cruise Line, Oceania Cruises, and Regent Seven Seas Cruises brands. During the Class Period, Defendant Frank J. Del Rio ("Del Rio") served as the Company's Director, President, and Chief Executive Officer ("CEO"), and Defendant Mark A. Kempa ("Kempa") served as the Company's Executive Vice President and Chief Financial Officer ("CFO"). Defendants Del Rio and Kempa are together referred to herein as the "Individual Defendants." Defendant Norwegian and the Individual Defendants are sometimes collectively referred to herein as "Defendants."

In December of 2019, a novel coronavirus strain called COVID-19 was first detected in the city of Wuhan in the Hubei province of China. Since then, the virus has spread rapidly around the world. The spread of COVID-19 has had a significant impact on the cruise industry, with reports of "canceled trips and half-empty ships."

On February 20, 2020, the Company filed a Form 8-K with the SEC. Attached to the Form 8-K was a press release reporting on the Company's financial results for the quarter and full year ended December 31, 2019. In that press release, Defendants discussed positive outlooks for the Company in spite of the COVID-19 outbreak stating, in relevant part:

---

[2]     These facts were derived from the complaint filed in the *Douglas* Action.

3

- "Despite the current known impact from the COVID-19 coronavirus outbreak, as of the week ending February 14, 2020, the Company's booked position remained ahead of prior year and at higher prices on a comparable basis …."; and

- "[O]ur Company has an exemplary track record of demonstrating its resilience in challenging environments and we remain confident in our ability to deliver strong financial performance over the long-term."

The Company also touted the procedures it had in place to protect its guests and crew from the outbreak, stating it had implemented: "several preventative measures to reduce potential exposure and transmission of COVID-19 and to protect the health, safety, security and well-being of its guests and crew."

On February 27, 2020, the Company filed its Form 10-K with the SEC for the period ending December 31, 2019. The Form 10-K attached certifications attesting to the accuracy and effectiveness of the Company's internal controls and was signed by the Individual Defendants. The Form 10-K stated in relevant part that the Company placed the "utmost importance on the safety of [its] guests and crew," operated all of its vessels to meet international safety standards, and also recognized that "viral outbreaks could have an adverse effect on [its] business."

These statements were false and/or misleading and/or failed to disclose that the Company was employing sales tactics of providing customers with unproven and/or blatantly false statements about COVID-19 to entice customers to purchase cruises, thus endangering the lives of both their customers and crew members.

On March 11, 2020, the *Miami New Times* reported in an article titled ("Leaked

4

Emails: Norwegian Pressures Sales Team to Mislead Potential Customers About Coronavirus") that the Company directed its sales staff to lie to customers regarding COVID-19. The article also revealed the negative financial impact the COVID-19 outbreak was causing on the Company and its employees. On this news, the Company's shares fell $5.47 per share or approximately 26.7% to close at $15.03 per share on March 11, 2020, damaging investors.

The first lawsuit filed in this District raising these allegations, the *Douglas* Action, was filed on March 12, 2020, on behalf of purchasers of Norwegian's publicly traded securities between February 20, 2020 and March 12, 2020. A substantially similar lawsuit, the *Atachbarian* Action, was filed on March 31, 2020, which was consolidated with the *Douglas* Action on April 10, 2020. A third substantially similar lawsuit, the *Banuelos* Action, was filed on April 22, 2020.

On March 12, 2020, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), a notice announcing the filing of the *Douglas* Action was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day, or May 11, 2020. *See* George Decl., Ex. 3. Mr. Le is a Class Member who has timely filed this motion within the 60-day period following publication of the March 12, 2020 notice. *See Id.*

**ARGUMENT**[3]

I.    **THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS**

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting

---

3       Unless otherwise noted, all emphasis is added and all citations are omitted.

substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see Grand Lodge of Pa. v. Peters*, No. 07-479, 2007 U.S. Dist. LEXIS 48191, at *4 (M.D. Fla. June 22, 2007) (recognizing that "[t]he PSLRA requires that the Court consolidate the actions, if warranted, before determining lead plaintiff"). Pursuant to Rule 42(a), the court enjoys broad discretion to determine whether consolidation is appropriate. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 501 (S.D. Fla. 2002); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016); *see also* Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *Newman,* 209 F.R.D. at 501-02; *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Primavera Familienstiftung*, 173 F.R.D. at 129; *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998) (same).

Two of the related actions here have already been consolidated. The remaining related action makes virtually identical allegations on behalf of a similar class of shareholders against the same Defendants. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

II.     **MR. LE IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD APPOINT HIM LEAD PLAINTIFF**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the first plaintiff to file and action is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1302 (M.D. Fla. 2000).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *See generally Piven,* 137 F. Supp. 2d at 1302. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)    has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of

7

Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts in this Circuit routinely rely on both of these cases for guidance.[4] After extensive analyses, both courts concluded that this statutory framework sets out a mandatory, strict, and sequential three-step process:

First, the Court must confirm that proper notice has been disseminated pursuant to the PSLRA. *Cavanaugh*, 306 F.3d 726, 729-31; *accord* 15 U.S.C. §§ 78u-4(a)(3)(A)(i).

Second, to identify the "most adequate plaintiff," the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff … is the person or group of

---

[4]     *See, e.g., City Pension Fund v. Aracruz*, No. 08-23317, 2009 U.S. Dist. LEXIS 140999, at *8 (S.D. Fla. Aug. 7, 2009) (citing Cendant); *In re Faro Techs. Sec. Litig.*, No. 05-1810, 2006 U.S. Dist. LEXIS 23500, at *8 (M.D. Fla. Apr. 26, 2006) (citing *Cavanaugh* and *Cendant*); *Hill v. Accentia Biopharmaceuticals, Inc.*, No. 13-1945, 2013 U.S. Dist. LEXIS 170982, at *3 (M.D. Fla. Dec. 4, 2013) (citing *Cavanaugh* and *Cendant*); *Einhorn v. Axogen, Inc.*, No. 19-69, 2019 U.S. Dist. LEXIS 195312, at *10 (M.D. Fla. Apr. 30, 2019) (citing *Cendant*).

8

persons that … has the largest financial interest in the relief sought by the class … and otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I). During this step, the Court must "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30. The Court "must then focus its attention on *that* plaintiff and determine, *based on the information he has provided in his pleadings and declarations*, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730.[5]

Third, the Court may then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730; *accord Cendant*, 264 F.3d at 262 ("[T]he court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption."). Importantly, though, the PSLRA's presumption may be rebutted "only upon *proof*" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Only if, as a result of this three-step process, the presumptive lead plaintiff does not meet the typicality or adequacy requirement, can the Court then proceed to analyze the plaintiff with the next lower stake. *Cavanaugh*, 306 F.3d at 729-730. Importantly, though, in coming to this conclusion, the *Cavanaugh* and *Cendant* courts outlined three critical

---

[5]     In connection with lead plaintiff appointments, courts have consistently held that the Rule 23 considerations are limited to an evaluation of typicality and adequacy. *See Piven,* 137 F. Supp. 2d at 1306 (citing *Fischler v. Amsouth Bancorporation*, No. 97-1567, 1997 U.S. Dist. LEXIS 2875, at *7 (M.D. Fla. Feb. 6, 1997)).

guidelines:

First, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate – a lower showing than the *proof* required of competing movants in the adversarial step three. *Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements *need not be extensive*." Rather, "the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie case* of typicality and adequacy.").[6]

Second, the Court's *prima facie* determinations of typicality and adequacy must be "based on the information [the movant] has provided *in his pleadings and declarations*," and rebuttal evidence introduced by competing movants should specifically not be considered during this second step presumption analysis. *Cavanaugh*, 306 F.3d at 730.[7] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's *complaint and sworn certification; there is no adversary process to test the substance of those claims.*" *Id.* Rather, it is "[a]t the third stage [that] the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's *prima facie* showing of typicality and adequacy." *Id.*[8]

---

[6]      *Accord Aracruz*, 2009 U.S. Dist. LEXIS 140999, at *8 ("This inquiry is not as "searching as the one triggered by a motion for class certification," but requires the lead plaintiff status to make a prima facie showing of typicality and adequacy.") (quoting *Cendant*, 264 F.3d at 263-4).

[7]      *Accord Cendant,* 264 F.3d at 264 ("In conducting the initial [presumption] inquiry … the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.").

[8]      *Accord Cendant,* 264 F.3d at 263-64 (The "threshold determination" of typicality and adequacy "should be a product of the court's independent judgment, and [] arguments by

Finally, the lead plaintiff determination does not depend on the Court's judgment of which party will be the best lead plaintiff for the Class, but rather which movant fulfills the statutory requirements. "[T]he statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case …. That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence …. [H]e is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.[9]

Applying these governing standards, Mr. Le is the presumptive "most adequate plaintiff" – and thus his motion should be granted and all other competing motions denied – because he: (A) filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the PSLRA's statutory requirements; (B) has the largest known financial interest in the relief sought; and (C) "otherwise satisfies" the minimal, *prima facie* requirements of Rule 23.

### A.    Mr. Le Filed a Timely and Procedurally Complete Motion for Lead Plaintiff

Under the PSLRA, the first plaintiff to file an action must publish notice advising

members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted."); *Einhorn,* 2019 U.S. Dist. LEXIS 195312, at *5 (finding "[i]n the absence of a showing of a reasonable basis by another [putative class member], no evidentiary proof of the Rule 23 requirements is required at the lead plaintiff appointment stage[.]").

[9]    *Accord Cendant*, 264 F.3d at 268 ("[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff …. [T]he inquiry is not a relative one."); *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 535-36 (S.D.N.Y. 2015) ("[A] district court's belief that 'another plaintiff may be more typical or more adequate is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'") (citing *Cavanaugh*, 306 F.3d at 732).

members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A-B). Here, notice was published on *Business Wire* on March 12, 2020, and specified that applications for appointment as Lead Plaintiff were to be made no later than 60 days from that day, or May 11, 2020. *See* George Decl., Ex. 3.[10] Thus, the notice satisfied the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

In light of the fact that the original notice was published on March 12, 2020, the deadline for application to be lead plaintiff is May 11, 2020. *See* George Decl., Ex. 3; FED. R. CIV. P. 6. Mr. Le has therefore timely filed his motion. Moreover, with that motion, Mr. Le has signed and submitted the required Certification, in which he certified his trading history during the relevant period and confirmed his willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. §§ 78u-4(a)(2)(A). George Decl., Ex. 1. Accordingly, Mr. Le has filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the statutory requirements.

### B.      Mr. Le Has the Largest Known Financial Interest in the Relief Sought

The PSLRA establishes a presumption that the person with the largest financial interest in the relief sought by the class, and who otherwise satisfies the typicality and

---

[10]     Publication by a national press release firm like *Business Wire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See McIlvaine v. Arthrocare Corp.*, No. 08-80343, 2008 U.S. Dist. LEXIS 130944, at *8 (S.D. Fla. July 16, 2008) (finding that notice published via *Business Wire* satisfied the PSLRA's notice requirement).

adequacy requirements of Rule 23, is the most adequate plaintiff and entitled to lead plaintiff status under 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Einhorn*, 2019 U.S. Dist. LEXIS 195312, at *4. During the Class Period, as evidenced by his Certification and accompanying Loss Charts, Mr. Le acquired Norwegian securities and incurred substantial losses on his transactions as a result of the materially false and misleading statements and/or omissions issued by the Defendants. *See* George Decl., Exs. 1-2. *Specifically, Mr. Le has suffered approximately $86,969.74 in losses as a result of his transactions in Norwegian securities during the Class Period.* To the best of his knowledge, Mr. Le thus has the largest financial interest in the relief sought.

### C.      Mr. Le "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate, that *prima facie* determination should be based on the information the movant has provided in its pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. *Supra* §II. Here, Mr. Le easily satisfies these minimal, *prima facie* requirements.

#### 1.      Mr. Le's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims … of the representative parties" are "typical of the claims … of the class." The typicality requirement is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that

gives rise to claims of other class members, and when the claims are based on the same legal theory. *Einhorn,* 2019 U.S. Dist. LEXIS 195312, at *5 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Biver v. Nicholas Fin., Inc.*, No. 14-250, 2014 U.S. Dist. LEXIS 60019, at *15 (M.D. Fla. Apr. 30, 2014) (citing *Kornberg,* 741 F.2d 1332 at 1337); *Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001); *Ferrari v. Impath*, No. 03-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004) (same); *see also In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is easily met because Mr. Le's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. Like all the other Class Members, Mr. Le (1) acquired Norwegian securities during the Class Period; (2) acquired Norwegian securities in reliance upon the allegedly materially false and misleading statements and/or omissions issued by Defendants; and (3) suffered damages by acquiring Norwegian securities at artificially inflated prices and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Accordingly, because his claims and the claims of other Class Members resulted from the same illegal practices, Mr. Le's claims are typical of those of other Class Members.

14

### 2.       Mr. Le Will Adequately Represent the Class

Under Rule 23(a)(4), a representative party must also "fairly and adequately protect the interests of the class." Under the PSLRA, the Court's adequacy inquiry is limited to the existence of any conflicts between the interests of the movant, on the one hand, and the members of the class, on the other, and adequacy is satisfied (1) by the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, Mr. Le is a *prima facie* adequate representative. As evidenced by the injuries suffered by Mr. Le, who acquired Norwegian securities at prices that were artificially inflated by Defendants' materially false and misleading statements and/or omissions, the interests of Mr. Le are clearly aligned with the members of the Class, and there is no evidence of any antagonism between his interests and those of the other members of the Class. To the contrary, Mr. Le, who currently resides in Austin, Texas, is an experienced software engineer and has been personally investing in the stock market and managing his own portfolio for close to a decade.

Furthermore, Mr. Le has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. *Infra* §III. Thus, Mr. Le satisfies the minimal, *prima facie* typicality and adequacy requirements of Rule 23, is thus the presumptive "most adequate plaintiff," and should therefore be appointed lead plaintiff.

### III.    THE COURT SHOULD APPROVE MR. LE'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the appointed Lead Plaintiff to select and retain counsel to represent the putative class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Mr. Le has selected KSF to serve as Lead Counsel for the Class, a firm with substantial expertise in the prosecution of securities class actions in federal and state courts across the country. *See* George Decl., Ex. 4.

With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* George Decl., Ex. 4 (KSF Firm Resume). Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions. *See id.* (citing *Khoja v. Orexigen Therapeutics, Inc. et al.*, No. 16-56069 (9th Circuit) (setting critical securities law precedent); *In re Petrobas Securities Litigation*, No. 1:14-cv-9662 (S.D.N.Y.) (acting as member of plaintiffs' steering committee that secured $3 billion settlement and found to have "made a substantial contribution to the class"); and *Kasper v. AAC Holdings, Inc.* 3:15-cv-00923 (Consolidated) (M.D. Tenn.) (securing $25 million settlement for investors)). KSF also served as special counsel and court-appointed Co-Class Counsel to the lead plaintiff in *The Erica P. John*

16

*Fund, Inc. v. Halliburton Company, et al.*, No. 3:02-cv-1152-M (N.D. Tex.), where Plaintiff achieved a $100 million recovery for the class and where Plaintiff prevailed twice before the United States Supreme Court. George Decl., Ex. 4.

Mr. Le's selection of Liaison Counsel, GGM, likewise possesses a high degree of skill and professionalism, having been involved in numerous complex class action cases. *See* George Decl., Ex. 5 (GGM Firm Resume).

Thus, the Court may be assured that, in granting this motion, the Class will receive legal representation of the highest caliber.

## CONCLUSION

For these reasons, Dat N. Le respectfully requests that this Court: (1) consolidate the related actions; (2) appoint him as Lead Plaintiff in this consolidated action; (3) approve his selection of KSF as Lead Counsel and GGM as Liaison Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

## Local Rule 7.1(a)(3) Certification

Local Rule 7.1(a)(3) requires a conference of counsel prior to filing motions. Due to the PLSRA's lead plaintiff procedure, however, Movant will not know which other class members may move for appointments as lead plaintiff until after all the movants have filed their respective motions. Under these circumstances, Movant requests that the conferral requirement of Local Rule 7.1(a)(3) be waived.

DATED: May 11, 2020

Respectfully submitted,

By: /s/*David J. George*
    DAVID J. GEORGE (Trial Counsel)
    Florida Bar No.: 898570
    dgeorge@4-justice.com
    GEORGE GESTEN MCDONALD, PLLC
    9897 Lake Worth Road
    Suite 302
    Lake Worth, FL 33463
    Telephone: 561-232-6002
    Facsimile: 561-421-4173

    *Counsel for Movant Dat N. Le and Proposed
    Liaison Counsel for the Class*

    LEWIS S. KAHN
    (Louisiana Bar # 23805)
    (*pro hac vice application to be filed*)
    MELINDA A. NICHOLSON
    (Louisiana Bar # 32911)
    (*pro hac vice application to be filed*)
    MICHAEL J. PALESTINA
    (Louisiana Bar # 31907)
    (*pro hac vice application to be filed*)
    KAHN SWICK & FOTI, LLC
    1100 Poydras Street, Suite 3200
    New Orleans, LA 70163
    Telephone: (504) 455-1400
    Facsimile: (504) 455-1498
    Lewis.Kahn@ksfcounsel.com

18

Melinda.Nicholson@ksfcounsel.com
Michael.Palestina@ksfcounsel.com

*Counsel for Dat N. Le and Proposed Lead
Counsel for the Class*

19

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

/s/*David J. George*
DAVID J. GEORGE