UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ERIC DOUGLAS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NORWEGIAN CRUISE LINES, FRANK J. DEL RIO, and MARK A. KEMPA, <br><br> Defendants. | Case No.  1:20-cv-21107-RNS <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOEL KEEFE AND CAMILLE PAGAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL** |
| ANGEL BANUELOS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NORWEGIAN CRUISE LINES, FRANK J. DEL RIO, and MARK A. KEMPA, <br><br> Defendants. | Case No.  1:20-cv-21685-JEM |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 6

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
            PURPOSES ............................................................................................... 6

    II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS ........................... 7

          A.    Movants are Willing to Serve as Class Representatives ............................ 8

          B.    Movants Have the "Largest Financial Interest" in the Related Actions ..... 8

          C.    Movants Otherwise Satisfy the Requirements of Rule 23 .......................... 9

    III.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED
            ................................................................................................................. 11

CONCLUSION .................................................................................................................... 13

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brustein v. Lampert*, 04-61159-CIV-LENARD/KLEIN,
    2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) ..........................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...............................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................................10

*In re Sunbeam Sec. Litig.*, No. 98-8258-CIV-MIDDLEBROOKS,
    1998 U.S. Dist. LEXIS 21490 (S.D. Fla. Dec. 4, 1998) .......................................................6, 7

*Lax v. First Merchants Acceptance Corp.* No. 97 C 2715,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)..........................................................8, 9

*Miller v. Dyadic Int'l, Inc.*, 07-80948-CIV-DIMITROULEAS,
    2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) ........................................................10

*Mulvaney v. GEO Group, Inc.*, 16-cv-81494-MIDDLEBROOKS,
    2016 U.S. Dist. LEXIS 193402 (S.D. Fla. Nov. 18, 2016).......................................................11

*Newman v. Eagle Bldg. Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002).................................................................................................7

*Nghiem Tran v. Erba Diagnostics, Inc.*, 15-cv-24440-COOKE/TORRES,
    2016 U.S. Dist. LEXIS 186864 (S.D. Fla. Apr. 8, 2016) ..........................................................9

*Piven v. Sykes Enters.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000)...................................................................................10

*Plymouth County Ret. Sys. v. Carter's, Inc.*, 08-CV-2940-JOF,
    2009 U.S. Dist. LEXIS 20582 (N.D. Ga. Mar. 13, 2009)..........................................................8

*Prado-Steinman ex rel. Prado v. Bush*,
    22 F.3d 1266 (11th Cir. 2000) .................................................................................................10

*Thorpe v. Walter Inv. Mgmt., Corp.*, 1:14-cv-20880-UU,
    2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016)........................................................10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................................11

**Statutes**

15 U.S.C. §78u-4(a) ........................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

Fed. R. Civ. P. 42 ................................................................................................................1, 2, 6

**Other Authorities**

Manual for Complex Litigation (Third), § 20.123 (1995) ................................................................6

Joel Keefe and Camille Pagan (collectively, "Movants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3) (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Movants as Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired the publicly traded securities of Norwegian Cruise Line Holdings Ltd. ("Norwegian" or the "Company") from February 20, 2020 through March 12, 2020, both dates inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Shepherd, Finkelman, Miller & Shah, LLP ("SFMS") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act.  Norwegian investors, including Movants, incurred significant losses following the disclosure of the alleged fraud, which caused Norwegian's share price to fall sharply, damaging Movants and other Norwegian investors.

Pursuant to the PSLRA, the court is to appoint as Lead Plaintiffs the movant or group of movants who possess the largest financial interest in the outcome of the action and who satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Movants, with losses of approximately $25,211, believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, Movants also meet the applicable requirements of Rule 23 because their claims are typical of absent class members and because they will fairly and adequately represent the interests of the Class.

In order to fulfill their obligations as Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Movants have selected Pomerantz as Lead Counsel and SFMS as Liaison Counsel for the Class. Both firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Consolidation is appropriate under Federal Rule of Civil Procedure 42(a) where actions involve common questions of law or fact. Here, the Related Actions are both putative class actions alleging violations of the federal securities laws by an overlapping group of defendants arising from the same alleged fraudulent misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Accordingly, Movants respectfully request that the Court enter an order consolidating the Related Actions, appointing Movants as Lead Plaintiffs, and approving their selection of Pomerantz as Lead Counsel and SFMS as Liaison Counsel.

## STATEMENT OF FACTS

As alleged in the Complaint filed in the first-filed of the Related Actions, on August 1, 2017, Norwegian updated its Code of Ethical Business Conduct which is posted to the Company's website. The Code of Ethical Business Conduct, available throughout the Class Period, discussed health and safety standards, stating in relevant part:

> NCLH and its team members are expected to conduct business in compliance with applicable environmental, health and safety ("EHS") laws and regulations. ***NCLH's EHS programs are designed to ensure the preservation of the environment, and safety and security of NCLH's guests, team members and vendors.***

(Emphasis added).

In December of 2019, a novel coronavirus strain, now called COVID-19, was detected in the city of Wuhan in Hubei province, China.  Since then, the virus has spread to numerous countries.

The spread of COVID-19 has had a significant impact on the cruise industry, with reports of "canceled trips and half-empty ships."[1]

Throughout the Class Period, Defendants made materially false and/or misleading statements by misrepresenting and failing to disclose the adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was employing sales tactics of providing customers with unproven and/or blatantly false statements about COVID-19 to entice customers to purchase cruises, thus endangering the lives of both their customers and crew members; and (2) as a result, Defendants' statements regarding the Company's business and operations were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On March 11, 2020, *Miami New Times* reported in the article "Leaked Emails: Norwegian Pressures Sales Team to Mislead Potential Customers About Coronavirus" that leaked emails from a Norwegian employee showed that the Company directed its sales staff to lie to customers regarding COVID-19.  The article stated, in pertinent part:

---

[1] https://www.wsj.com/articles/coronavirus-leaves-cruise-industry-with-canceled-trips-and-half-empty-ships-11583330402

3

In the wake of the epidemic, a Norwegian Cruise Line (NCL) employee in South Florida tells *New Times* some managers have asked sales staff to lie to customers about COVID-19 to protect the company's bookings.

\* \* \*

Emails leaked to New Times show that a senior sales manager at NCL's Miami office came up with canned responses for the sales team to use if potential customers expressed concerns about COVID-19.

\* \* \*

Some of the lines in the script pressure a fictitious customer to book a cruise immediately to avoid paying more later.

"Mr Becker," the line reads, "due to the Coronavirus we have cancelled all of our Asia cruises on the Norwegian Spirit. This has caused a huge surge in demand for all of our other itineraries. I suggest we secure your reservation today to avoid you paying more tomorrow." (News reports, on the other hand, suggest cruise lines are suffering from a spate of canceled trips rather than experiencing high demand. NCL's stock price has fallen more than 35 percent in recent days.)

Other script lines simply reassure customers not to be afraid.

"The only thing you need to worry about for your cruise is do you have enough sunscreen?" one of the suggested talking points reads.

Some of the recommended responses are blatantly false. For instance, cruise bookers were instructed to tell potential customers that coronavirus is not a concern in warm Caribbean climates.

"The Coronavirus can only survive in cold temperatures, so the Caribbean is a fantastic choice for your next cruise," one talking point reads.

"Scientists and medical professionals have confirmed that the warm weather of the spring will be the end of the Coronavirus," reads a second.

Another line says coronavirus "cannot live in the amazingly warm and tropical temperatures that your cruise will be sailing to."

Further, the *Miami New Times* article revealed the financial impact the COVID-19 outbreak was causing on the Company and its employees, stating in part:

"We are hardly selling anything," the employee says. "Sales are at serious lows."

4

Members of the sales team lose any commission on a booking if the cruise is canceled, according to the employee. They are required to meet daily quotas — about 150 calls to potential customers, five hours on the phone, and three to five bookings.

"If you don't hit quota, you will absolutely be fired," the employee says. "No exceptions for [the] current virus situation. You may be put on a personal improvement plan for 30 days, but [that] basically means you're done."

The employee says managers are trying to downplay the disruption in sales "at all costs."

On this news, the Company's shares fell $5.47 per share or approximately 26.7% to close at $15.03 per share on March 11, 2020, damaging investors.

On March 12, 2020, the *Washington Post* published the article, "Norwegian Cruise Line managers urged salespeople to spread falsehoods about coronavirus."  The article revealed even more about Norwegian's sales tactics from leaked internal memoranda including dangerous statements such as:

"Focusing all of your attention is actually illogical, especially when we live in a world of daily threats and dangers anyhow," the manager wrote under the headline "The coronavirus will not affect you." "Fact: Coronavirus in humans is an overhyped pandemic scare."

The *Washington Post* article also disclosed Company executive's reaction to the leaked memorandum, including:

The whistleblower told The Post that company leaders are trying to find out who shared the emails. ***In one email sent Monday evening, after a Miami New Times journalist contacted the company, an executive wrote, "One of our own ratted."***

(Emphasis added).

On this news, the Company's shares fell a further $5.38 or approximately 35.8% to close at $9.65 on March 12, 2020, further damaging investors.

5

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**ARGUMENT**

**I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995). Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *In re Sunbeam Sec. Litig.*, No. 98-8258-CIV-MIDDLEBROOKS, 1998 U.S. Dist. LEXIS 21490, at *8 (S.D. Fla. Dec. 4, 1998) (consolidating actions "alleg[ing] substantially similar claims that share common questions of fact and law").

The Related Actions at issue here clearly involve common questions of law *and* fact.  Each action was brought against Norwegian and certain of its officers, in connection with alleged violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely that the Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Norwegian's securities and subsequently damaged the Class Members when Norwegian's stock price plunged as the truth emerged.  For substantively the same reasons, this Court already consolidated another case, styled *Abraham*

*Atachbarian v. Norwegian Cruise Lines et al*, No. 1:20-cv-21386 (S.D. Fla.), with the first-filed of the Related Actions. Consolidation of the Related Actions is therefore appropriate. *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The class actions currently before the Court are ideally situated for consolidation. The complaints present virtually identical claims for relief based upon a single course of conduct during the Class Period."); *In re Sunbeam*, 1998 U.S. Dist. LEXIS 21490, at *7-*8 ("Consolidation of related complex actions, and securities cases in particular, is commonplace and an effective use of judicial resources.").

## II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

Movants should be appointed Lead Plaintiffs because, to their knowledge, Movants have the largest financial interest in the Related Actions and otherwise satisfy the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

### A. Movants are Willing to Serve as Class Representatives

On March 12, 2020, counsel for plaintiff in the first-filed of the Related Actions published a notice over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and which advised investors in Norwegian securities that they had until May 11, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff (the "Notice").  *See* Declaration of Jayne A. Goldstein in Support of Motion ("Goldstein Decl."), Ex. A.  Movants have filed the instant motion pursuant to the Notice, and have attached Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. B.  Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs of the Class.

### B. Movants Have the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, Movants have the largest financial interest of any putative Class member seeking to serve as Lead Plaintiff.  For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997); *see also Plymouth County Ret. Sys. v. Carter's, Inc.*, 08-CV-2940-

JOF, 2009 U.S. Dist. LEXIS 20582, at *5 (N.D. Ga. Mar. 13, 2009) (assessing financial interest with reference to *Lax* factors).

During the Class Period, Movants: (1) purchased 1,700 shares of Norwegian securities; (2) expended $45,053 on purchases of Norwegian shares; (3) retained all of their shares of Norwegian securities; and (4) incurred losses of $25,211 in connection with their transactions in Norwegian securities. *See* Goldstein Decl., Ex. C. To the extent that Movants possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. Movants Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Brustein v. Lampert*, 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005); *Nghiem Tran v. Erba Diagnostics, Inc.*, 15-cv-24440-COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of

lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Thorpe v. Walter Inv. Mgmt., Corp.*, 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 33637, at *18 (S.D. Fla. Mar. 16, 2016).  Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all lead plaintiff candidates.

The typicality requirement of Federal Rule of Civil Procedure 23(a)(3) is satisfied where the named representatives' claims have the "same essential characteristics as the claims of the class at large." *Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1306 (M.D. Fla. 2000) (same).

Movants' claims are typical of those of the Class.  Movants allege, as do all Class members, that Defendants violated the federal securities laws by making untrue statements of material fact and omitting to state material facts necessary to make the statements made not misleading. Movants, as did all members of the Class, purchased Norwegian securities at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Norwegian's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that representative parties "will fairly and adequately protect the interests of the class." Class representatives must also have "sufficient interest in the outcome of the litigation to ensure vigorous advocacy." *Miller v. Dyadic Int'l, Inc.*, 07-80948-CIV-DIMITROULEAS, 2008 U.S.

10

Dist. LEXIS 32271, at \*19 (S.D. Fla. Apr. 18, 2008) (quoting *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)).

Movants have submitted signed Certifications declaring their commitment to protecting the interests of the Class.  *See* Goldstein Decl., Ex. B.  There is no evidence of antagonism or conflict between the Movants' interests and the interests of the Class.  The significant losses incurred by Movants demonstrate that they have a sufficient interest in the outcome of this litigation.

Movants likewise have demonstrated their adequacy because they are a small and cohesive group of two investors, who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them is prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Goldstein Decl., Ex. D.

## III.      LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with lead plaintiffs' selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa);  *see also Mulvaney v. GEO Group, Inc.*, 16-cv-81494-MIDDLEBROOKS, 2016 U.S. Dist. LEXIS 193402, at \*8 (S.D. Fla. Nov. 18, 2016); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Movants have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors,

as detailed in the firm's resume.  *See* Goldstein Decl., Ex. E.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See* Goldstein Decl., Ex. E.  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat investors that it has reached a $110 million settlement with the company.  *See* Patrick Thomas, *Fiat Chrysler to Settle Lawsuit for $110 Million*, Wall St. J., Apr. 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066). Courts in this Judicial District and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *Dillard v. Platform Specialty Prods. Corp.*, 16-cv-80490 (S.D. Fla.); *Mulvaney v. The GEO Group, Inc.*, 16-cv-81494 (S.D. Fla.); and *Kessman v. Myriad Genetics, Inc.*, 18-cv-336 (D. Utah).

SFMS is also well-qualified to serve as Liaison Counsel in the Related Actions.  As its firm resume reflects, SFMS maintains an office in Fort Lauderdale, Florida, and the firm specializes in securities class action matters, among other practice areas.  *See* Goldstein Decl., Ex. F.  SFMS has experience in achieving substantial recoveries in class actions, and its attorneys have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Movants' counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute the Related Actions effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of counsel by Movants, with Pomerantz as Lead

12

Counsel and SFMS as Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Movants as Lead Plaintiffs for the Class; and (3) approving Lead Plaintiffs' selections of Pomerantz as Lead Counsel and SFMS as Liaison Counsel for the Class.

Dated:  May 11, 2020                                    Respectfully submitted,

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein
Florida Bar Identification Number: 144088
**SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP**
1625 North Commerce Parkway,
Suite 320
Fort Lauderdale, FL 33326
Telephone: 954-515-0123
Facsimile: 866-300-7367
Email: jgoldstein@sfmslaw.com

*Counsel for Movants and
Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jlopiano@pomlaw.com

*Counsel for Movants and
Proposed Lead Counsel for the Class*