UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21107-Civ-SCOLA
(Consolidated with No. 20-21386 and 20-21685)

| | | |
|---|---|---|
| ERIC DOUGLAS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| NORWEGIAN CRUISE LINES, et al., | ) ) | |
| Defendants. | ) ) ) | |

**EMPLOYER-TEAMSTERS LOCAL NOS. 175 & 505 PENSION TRUST FUND'S
MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS
<u>FOR APPOINTMENT AS LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT .........................................................................................1

II.    ARGUMENT...................................................................................................................4

       A.     The Individual Investors Group Is an Improper Group ...........................................4

       B.     Perry Is Atypical, Inadequate, and Subject to Unique Defenses that Render
            Him Ineligible to Represent the Class ....................................................................8

            1.     Perry Has No Recoverable Losses...............................................................8

            2.     Perry Did Not Purchase Securities Issued by Norwegian During
                the Class Period...........................................................................................9

            3.     Perry Has Been Convicted and Is Currently Serving a Sentence for
                a Crime Implicating His Propensity for Dishonesty ..................................11

       C.     Only the Pension Trust Fund Satisfies the PSLRA's Requirements .....................13

       D.     The Remaining Movant Does Not Qualify for the PSLRA's Presumption...........14

III.   CONCLUSION.............................................................................................................16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andrada v. Atherogenics Inc.*,
No. 05 Civ. 00061(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ..................................10

*Applestein v. Medivation Inc.*,
No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)....................................9

*Bodri v. GoPro, Inc.*,
No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...................................10

*Brustein v. Lampert*,
No. 04-61159-CIV-LENARD/KLEIN, 2005 WL 8154797
(S.D. Fla. June 16, 2005) ......................................................................................4, 6, 7, 13

*Chill v. Green Tree Fin. Corp.*,
181 F.R.D. 398 (D. Minn. 1998)...........................................................................................10

*City Pension Fund for Firefighters & Police Officers v. Aracruz Cellulose S.A.*,
No. 08-23317-CIV, 2009 WL 10664427 (S.D. Fla. Aug. 7, 2009) ........................................14

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................................2, 8

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011)...............................................................................6

*Hall v. Nat'l Recovery Sys., Inc.*,
No. 96–132–CIV–T–17(C), 1996 WL 467512 (M.D. Fla. Aug. 9, 1996)...............................11

*Hartsell v. Source Media*,
No. 98-CV-01980-M, 2003 WL 21245989 (N.D. Tex. Mar. 31, 2003) .................................12

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
No. 04-0265, 2004 WL 1221353 (E.D. Pa. June 3, 2004).......................................................7

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) .............................................................................................4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................... *passim*

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06 cv 1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .............................8

## TABLE OF AUTHORITIES

**Page**

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761–AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............................3

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002) ......................................................................................7

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ..................................................................................6

*In re Network Assoc., Inc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..............................................................................11

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..............................................................................5, 6

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................................5

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ...............................11

*In re XM Satellite Radio Holdings Sec. Litig.*,
237 F.R.D. 13 (D.D.C. 2006) ..........................................................................................10

*Interstate Sec. Corp. v. Hayes Corp.*,
920 F.2d 769 (11th Cir. 1991) ..........................................................................................9

*Laventhall v. Gen. Dynamics Corp.*,
704 F.2d 407 (8th Cir. 1983) ..........................................................................................9, 10

*Phuong Ho v. NQ Mobile, Inc.*,
No. 13 Civ. 7608(WHP), 2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) ...................................6

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ..............................................................................6, 10, 14

*Sallustro v. Cannavest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. Mar. 19, 2015) ......................................................................9

*Savino v. Computer Credit, Inc.*,
164 F.3d 81 (2d. Cir. 1998) ............................................................................................11

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ..................................................................................8

# TABLE OF AUTHORITIES

**Page**

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................................6

*Weikel v. Tower Semiconductor Ltd.*,
183 F.R.D. 377 (D.N.J. 1998)...............................................................................................10

*Xianglin Shi v. Sina Corp.*,
No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)...................................11

Proposed Lead Plaintiff Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund ("Pension Trust Fund") respectfully submits this memorandum of law in opposition to the competing motions for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I. PRELIMINARY STATEMENT

Presently pending before the Court are three lead plaintiff motions filed by investors in Norwegian Cruise Line Holdings Ltd. ("Norwegian" or "Company") securities: (a) the Pension Trust Fund with an alleged loss of $136,074 (stock only); (b) William C. Perry, III ("Perry") and Brian Mark Eddy ("Eddy") (collectively, "Individual Investors Group") with an alleged combined loss of $267,807 (stock and options); and (c) Abraham Atachbarian ("Atachbarian") with an alleged loss of $71,250 (options only).[1]  While it appears at first glance that the Individual Investors Group may have suffered larger losses than the Pension Trust Fund, "the most adequate plaintiff" must also meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, and here, the Individual Investors Group does not.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

---

[1]  Five other movants also filed lead plaintiff motions but have since acknowledged that they cannot trigger the PSLRA presumption.  *See* ECF No. 28 (Dat N. Le's Notice of Non-Opposition, acknowledging "that several movants have asserted a larger financial interest in the relief sought by the Class"); ECF No. 29 (Herman Tumurcuoglu's Notice of Withdrawal of Motion, noting "Mr. Tumurcuoglu does not appear to have the largest financial interest"); ECF No. 30 (Joel Keefe and Camille Pagan's Notice of Non-Opposition, recognizing that they "do not appear to have the largest financial interest in this litigation within the meaning of the PSLRA"); ECF Nos. 31, 33 (Richard Myint's Notice of Withdrawal of Motion, noting that "it appears that Mr. Myint does not have the largest financial interest in the relief sought by the class, as required by the PSLRA"); ECF No. 32 (Simon Hurduise's Notice of Non-Opposition stating that "Movant does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA").

Indeed, neither the Individual Investors Group as a whole nor its constituents are typical or adequate.  First, the Individual Investors Group consists of geographically dispersed and unrelated individuals with no pre-existing relationship who were cobbled together by counsel for the sole purpose of combining losses in an effort to take control of the litigation – a fact that is confirmed by the group's vague Joint Declaration [ECF No. 24-4] and its proposed (unnecessary) double lead counsel structure.

Second, Perry, the individual claiming the largest losses in the Individual Investors Group, has overstated the size of his financial interest.  Indeed, under the Supreme Court's holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), **none** of Perry's trading losses are recoverable in this case, as he completely closed out his position in Norwegian securities by March 9, 2020, **before** the first alleged disclosure of any wrongdoing.  In other words, Perry was not holding any Norwegian securities at the time that those securities are alleged to have declined in response to the adverse disclosure on March 11, 2020; thus, he is atypical of the rest of the class and will be subject to the unique defense that the revelation of the fraud did not cause any of his losses.

Moreover, Perry is a short seller who transacted exclusively in Norwegian put options (not stock) which further renders him "atypical and inadequate," as his appointment "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary

- 2 -

conflict." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761–AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009).[2]

Finally, in September 2019 (roughly 8 months ago), Perry pled guilty to criminal charges and was sentenced to five years' probation for making small bank deposits in order to evade federal reporting requirements.  Such recent and serious admitted acts of dishonesty render Perry inadequate to serve in a fiduciary capacity on behalf of the putative class.  And, without Perry, who suffered 74% of the Individual Investors Group's claimed losses in this action, the alleged financial interest of the remaining member of the Individual Investors Group (Eddy) is considerably smaller than the Pension Trust Fund's financial interest.  Eddy cannot qualify for the presumption alone.  In sum, neither the Individual Investors Group, nor Perry individually, satisfy the PSLRA or Rule 23's requirements.  Therefore, the Court should deny the Individual Investors Group's motion seeking appointment as Lead Plaintiff.

As the movant with the largest loss that also satisfies Rule 23's requirements, the Pension Trust Fund should be appointed as Lead Plaintiff in this action.  Indeed, the Pension Trust Fund does not suffer from any of the Rule 23 concerns that disqualify the Individual Investors Group; rather, the Pension Trust Fund, a single institutional investor with experience serving as Lead Plaintiff in securities class actions such as this, is precisely the type of investor Congress envisioned leading these cases.  Accordingly, the Pension Trust Fund's motion should be granted.

---

[2]   Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

## II.    ARGUMENT

The PSLRA provides that in securities class actions, the Court must determine who among the movants for lead plaintiff status is the "most adequate plaintiff" to prosecute the action. *In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001). In determining which class member is "the most adequate plaintiff," the PSLRA instructs the Court to "adopt a presumption" that the most adequate plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.*; *see also Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN, 2005 WL 8154797, at *4 (S.D. Fla. June 16, 2005).

While courts first focus on the PSLRA's "financial interest" component, "a movant's financial interest is just a beginning point, and courts . . . must also consider the movant's ability and willingness to adequately represent the class." *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003). Moreover, where the lead plaintiff presumption established by the PSLRA attaches, it may be rebutted with a showing that the presumptively most adequate plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb); *see also Cendant*, 264 F.3d at 263-64. Thus, the fact that a group may collectively possess a larger financial interest than the Pension Trust Fund does not end the Court's inquiry.

### A.    The Individual Investors Group Is an Improper Group

Although the PSLRA explicitly permits a "group of persons" to serve as lead plaintiff (*see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), "a group is not entitled to presumptive lead plaintiff status unless it otherwise satisfies Rule 23, which in turn requires that it be able to fairly and adequately

protect the interests of the class," *Cendant*, 264 F.3d at 266. Indeed, "[i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id*.

A movant group will generally be rejected if the court determines that it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff[.]" *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001); *see also Cendant*, 264 F.3d at 267 ("If, for example, a court were to determine that the movant group with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that group could not be counted to monitor counsel in a sufficient manner.").

Courts are particularly "skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (collecting cases). Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest is contrary to Congress's express purpose of "transfer[ing] primary control of private securities litigation from lawyers to investors." *Id*. Instead, "[i]t ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation." *Id*. at 621-22.

Accordingly, courts regularly evaluate proposed lead plaintiff "groups" to determine "whether the grouping is sufficiently coherent to control the litigation." *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 44-45 (D. Mass. 2001). Among the factors courts consider are: whether the members of the group have a pre-existing relationship; whether the group has cooperated effectively thus far; and whether the group has a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation. *See Petrobras*, 104 F. Supp. 3d at 622; *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (outlining the factors a court may consider when evaluating a proposed group).

In recognition of these limitations, precisely because it is made up of unrelated, geographically dispersed members, the Individual Investors Group attempts to manufacture cohesion via a Joint Declaration in support of their motion. ECF No. 24-4. Yet, the mere submission of the Joint Declaration alone is insufficient to make the necessary adequacy showing. *See Brustein*, 2005 WL 8154797, at *6 (refusing to appoint a group of individuals despite the submission of a joint declaration); *Phuong Ho v. NQ Mobile, Inc.*, No. 13 Civ. 7608(WHP), 2014 WL 1389636, at *5 (S.D.N.Y. Apr. 9, 2014) (finding "[a] declaration that an unrelated group has implemented communication protocols to enable [them] to confer via phone and/or email is insufficient to show that the [g]roup would be able to effectively manage litigation"); *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478 (S.D.N.Y. 2011) (noting that "[e]ven in this 'only-for-PSLRA' world," and despite a joint declaration, a German, Danish, and U.S. entity were "strange bedfellows"); *see also Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074-75 (W.D. Wash. 2011) (even when members of a group submit a declaration that they are a "small,

cohesive group who intend to work closely together . . . [t]hese types of generalities have little or no substance").

Moreover, the Individual Investors Group's Joint Declaration does nothing to advance their position that they are a proper group under the PSLRA. Instead, it demonstrates that the group was "cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff." *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 WL 1221353, at *4 (E.D. Pa. June 3, 2004). The Joint Declaration makes clear that before this motion, Perry, a resident of Honolulu, Hawaii, and Eddy, a resident of Orange Beach, Alabama, were strangers without a pre-existing relationship. Other than vague references to discussions concerning "the importance of joint decision-making, open communication and the ability to confer, with or without counsel" [ECF No. 24-4, at ¶8], and that they "agreed to set up periodic conference calls as often as necessary" [*id*. at 11], the Joint Declaration provides no examples of how the group can or will work cohesively. Rather, the Joint Declaration is full of non-substantive "buzz words" offered in an attempt to convince the Court of their adequacy.

Nor does the Joint Declaration provide a compelling reason as to why the group is well-suited to serve as Lead Plaintiff. In fact, their stated reason – "securing the maximum potential recovery for harmed Norwegian investors" [*id*. at ¶¶6, 9] – is shared by *any* investor who sustained losses in their transactions in Norwegian securities, including the Pension Trust Fund. *See Brustein*, 2005 WL 8154797, at *6 (finding that commitment to joint control over the litigation and joint management of counsel was not evidence of how unrelated, geographically dispersed group members would fulfil those commitments); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (rejecting group of unrelated investors where, *inter alia*, the

- 7 -

group "represents that its members have thoughtfully opted to join together, but does not explain why joinder is necessary or beneficial to this litigation").  Nor is there any added benefit of a joint prosecution in this instance.  The Pension Trust Fund is a sophisticated institutional investor with experience serving as a lead plaintiff in securities class actions represented by a single firm with an office in this District and substantial experience litigating complex securities actions like this case.  Accordingly, the Individual Investors Group's motion should be denied.

> **B.      Perry Is Atypical, Inadequate, and Subject to Unique Defenses that Render Him Ineligible to Represent the Class**

>> **1.      Perry Has No Recoverable Losses**

In *Dura*, the Supreme Court made clear that investors cannot recover losses based on declines in the prices of securities prior to any alleged disclosure of the fraud, as investors will be unable to plead loss causation for those trading losses.  *See Dura Pharm.*, 544 U.S. at 347 (holding that to properly allege loss causation, one of the elements of a claim for securities fraud, the plaintiff must allege that the share price "fell significantly after the truth became known"); *see also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) ("When selecting a lead plaintiff, courts must consider only those losses that will actually be recoverable in the class action.").  Perry traded all of his options between February 25, 2020 and March 9, 2020, ***before*** the first alleged corrective disclosure on March 11, 2020.  *See*  ECF No. 24-1 & 24-2.  As such, Perry will be unable to successfully plead loss causation for ***any*** of his trades.  *See Dura Pharm.*, 544 U.S. at 347.  Courts regularly consider loss causation, and the principles articulated by *Dura*, in the context of a PSLRA motion.  *See, e.g.*,  *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 cv 1825(NGG)(RER), 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007) ("*Dura* [and its progeny] . . . require a court to make pre-discovery loss causation determinations regarding

asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint."); *see also Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. Mar. 19, 2015) (finding that "transactions that occurred prior to [the corrective disclosure date], will not be considered in calculating recoverable loss or in determining lead plaintiff status").  As Perry's trades all preceded the first alleged disclosure in this case, his losses from those trades (and the only losses that he alleges here) are not recoverable, rendering him inadequate and atypical.

### 2. Perry Did Not Purchase Securities Issued by Norwegian During the Class Period

The consolidated actions were brought on behalf of all those who "purchased or otherwise acquired the publicly traded securities of Norwegian from February 20, 2020 through March 12, 2020, inclusive ("Class Period")."  *See* ECF No. 1.  As an investor who transacted exclusively in Norwegian put option contracts, Perry did not purchase any "securities" issued by Norwegian during the Class Period.  By definition, a put option is not a security issued by Norwegian; rather, it is a private contract between two parties giving one the contractual right to buy or sell a security. *See* BLACK'S LAW DICTIONARY (8th. ed. 2004*); Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769, 771 n.4 (11th Cir. 1991) ("A put option is a contract in which one party buys the right to sell particular securities at a specified price at or within a specified time to another party.");  *Laventhall v. Gen. Dynamics Corp.*, 704 F.2d 407, 411 (8th Cir. 1983) ("options trader has no equity interest in the corporation by virtue of his selling or purchasing an option on the corporation's stock"). Because Perry only transacted in put options, he should not be appointed to serve as Lead Plaintiff. *See Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010).

Moreover, courts around the country disfavor appointing investors who *only* transacted in options – not common stock – as lead plaintiff because of valuation differences between options and common stock, as well as the potential that the defendant could assert unique defenses against the options trader. *See Andrada v. Atherogenics Inc.*, No. 05 Civ. 00061(RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) ("As an options holder, [movant] is potentially subject to unique defenses irrelevant to regular stock purchasers in the class, as well as standing challenges."). Specifically, "[w]ere [Perry] to be appointed lead plaintiff for the entire class, factual issues specific to [Perry] in determining the precise value of the options – e.g., the maturity, the volatility of the price of the [Norwegian] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded – would likely threaten to become the focus of the litigation." *Id*. at *5; *see also Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (refusing to certify options trader as class representative because "the price of the underlying security is not the sole factor for determining the price of an option"); *Laventhall*, 704 F.2d at 414-15 (options holder does not have standing to sue corporation trading solely in common stock); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 407 (D. Minn. 1998) (refusing to appoint options trader as lead plaintiff in common stock action and noting that "the distinction between options traders and stock traders is too notable, and potentially vexing, to ignore").[3]

---

[3]   Any attempt to justify the appointment of the Individual Investors Group by arguing that Perry could represent a separate options subclass lacks merit because options and other equity-type securities of a particular issuer are derivative securities of common stock. *See Richman*, 274 F.R.D. at 476-77 (rejecting argument that options holder needed to be appointed to protect the interests of the class); *see also In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (rejecting argument in support of appointing lead plaintiff for a subclass of options purchasers because, "under PSLRA, [t]he fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA"); *Bodri v.*

**3.      Perry Has Been Convicted and Is Currently Serving a Sentence for a Crime Implicating His Propensity for Dishonesty**

Honesty and trustworthiness are relevant factors in determining an individual's ability to serve as a class representative on behalf of a class.  *See, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d. Cir. 1998).  "On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004).  For this reason, courts have rejected appointment of class representatives on the basis of their past criminal conduct.  *See In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (fraud investigation of proposed lead plaintiff was a "major negative[]" to entity's appointment as lead plaintiff, holding "the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence"); *Hall v. Nat'l Recovery Sys., Inc.*, No. 96–132–CIV–T–17(C), 1996 WL 467512, at *5-6 (M.D. Fla. Aug. 9, 1996) (pattern of prior misconduct by proposed class representative raised concerns about reliability and conscientiousness, justifying denial of class certification).   Indeed, a fraud conviction or other forms of dishonesty undermine a proposed class representative's adequacy to represent the class.  S*ee Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005) (disqualifying proposed group as class representative whose member with the largest financial interest had been convicted of providing false information to a

---

*GoPro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) (holding that "the appointment of a co-lead plaintiff to represent the interests of options purchasers is necessary," because "[b]eing a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims").

financial institution); *see also Hartsell v. Source Media,* No. 98-CV-01980-M, 2003 WL 21245989, at *3 (N.D. Tex. Mar. 31, 2003) ("recognition of that fiduciary duty to the class as a whole should compel recognition of a serious potential problem for the class, when a class representative, whose duties obviously require acting on behalf of absent persons, is convicted of a felony involving fraud").

Here, Perry has a criminal history that undermines his ability to serve as a fiduciary on behalf of the class.  Specifically, on December 13, 2018, Perry was indicted for depositing $366,750 in 43 different transactions of between $9,500 and $9,900 each, knowingly and for the purpose of evading the reporting requirements of 31 U.S.C. §5313(a).  *See United States v. Perry*, No. 1:18-cr-00194-SOM (D. Hi.) [*Perry*, ECF No. 1], attached to the Supplemental Declaration of Sabrina E. Tirabassi ("Supp. Tirabassi Decl."), filed herewith, as Exhibit 1.  Thereafter, on September 16, 2019, Perry entered a voluntary plea of guilty to the Indictment.  Supp. Tirabassi Decl., Ex. 2 [*Perry*, ECF No. 30].  The Memorandum of Plea Agreement details how between about September 30, 2013 and January 10, 2014, Perry withdrew at least $366,750 from the communal assets that he held in common with his wife at the time, and that he kept this amount in cash in a safety deposit box at his local bank, which he hid from his then-wife as he secured a divorce.  *Id*. at ¶8.  After completing the divorce, Perry moved the cash into his E*TRADE account by breaking the sum down into increments under $10,000, which he admitted to doing because he was aware of the $10,000 currency reporting requirement and wanted to avoid creating a paper trail, which he believed would be investigated by the Internal Revenue Service.  *Id*.  Perry was adjudicated guilty of the alleged offense and sentenced to five years' probation just over two

months ago, on March 16, 2020.[4]  Supp. Tirabassi Decl., Ex. 3 [*Perry*, ECF No. 43].  Together with that sentence, Perry was ordered to pay, among other things, a money judgment of $55,012.50, restitution in the amount of $183,375 to his ex-wife, and a fine of $20,000.  *Id*.

Because Perry was charged and convicted of a crime that implicates his propensity for dishonesty and untrustworthiness and is currently serving a sentence that restricts his ability to leave the state of Hawaii, he cannot make the Rule 23 showing.  Without the inclusion of Perry's losses, the Individual Investors Group does not have the largest financial interest.  As such, this Court should deny the Individual Investors Group's application.

### C.       Only the Pension Trust Fund Satisfies the PSLRA's Requirements

Because the Individual Investor Group does not satisfy Rule 23 and is subject to unique defenses, the Court must "repeat this process until a presumptive lead plaintiff is identified." *Cendant*, 264 F.3d at 267.  The Pension Trust Fund is the first – and only – movant before the Court that satisfies all of the PSLRA's requirements.

More specifically, the Pension Trust Fund satisfies Rule 23(a)(3)'s typicality requirement because its claims, like the claims of every other class member, are premised on defendants' dissemination of false and misleading public statements in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a).  *See Brustein*, 2005 WL 8154797, at *7 (typicality requires a showing "that a party seeking to represent a class have claims or defenses [that] are typical of the claims and defenses of the class").  Additionally, the Pension

---

[4]    Among one of the outlined Conditions of Supervision, Perry may not leave the District of Hawaii "without first getting permission from the court or the probation officer."  Supp. Tirabassi Decl., Ex. 3 at 3, ¶3.  Such a limitation may result in Perry's inability to effectively prosecute the action in this District, should any in-person appearances be required.

Trust Fund satisfies Rule 23(a)(4)'s adequacy requirement because its interests do not conflict with the interests of any other class member, and it has retained experienced counsel to vigorously prosecute this action on behalf of the class. *See id.* (the adequacy component of Rule 23 requires a showing that the "representative party be able to fairly and adequately protect the interests of the class").

Moreover, as an institutional investor, the Pension Trust Fund is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See Cendant*, 264 F.3d at 273 (3d Cir. 2001); *see also City Pension Fund for Firefighters & Police Officers v. Aracruz Cellulose S.A.*, No. 08-23317-CIV, 2009 WL 10664427, at *5 (S.D. Fla. Aug. 7, 2009) ("Institutional investors . . . . are generally preferred to individual investors for the reason that they are typically better equipped to represent the interests of the class and supervise litigation."); *see also Richman*, 274 F.R.D. at 477 (refusing to "put an individual plaintiff in charge of a litigation that Congress has instructed should be guided by institutional investors").

Accordingly, because the Pension Trust Fund timely filed its motion, has the largest financial interest of the competing movants, ***and*** otherwise satisfies Rule 23, the Pension Trust Fund is the presumptive Lead Plaintiff in this action.

**D.      The Remaining Movant Does Not Qualify for the PSLRA's Presumption**

The remaining movant, Abraham Atachbarian, claims a financial interest smaller than the Pension Trust Fund:

| Movant | Alleged Loss |
|---|---|
| Pension Trust Fund | $136,074 |
| Abraham Atachbarian[5] | $71,250 |

Consequently, the Court cannot consider his motion unless the presumption in favor of appointing the Pension Trust Fund as Lead Plaintiff is rebutted with proof. *Cendant*, 264 F.3d at 268 (presumption "may be rebutted *only* upon *proof by a member of the purported plaintiff class* that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.") (emphasis in original).

Here, because the Pension Trust Fund is willing to serve and satisfies Rule 23's requirements, and no proof rebutting its typicality and adequacy has been (or can be) put forth, the remaining motion should be denied.

---

[5]   Atachbarian alleges losses attributable only to options purchases.  He is, therefore, atypical for the reasons set forth above.  *See* §II.B.2, *supra.*  Additionally, also like Perry, Atachbarian was completely closed out of his position by March 3, 2020, prior to the first corrective disclosure, thus he is subject to the unique defenses that his losses were not caused by the Company's alleged fraud.  ECF No. 14-1; *see* §II.B.1, *supra.*  In any event, even if the Court were to consider his alleged losses, Atachbarian's "alternative" argument that he should represent a separate subclass of options holders [ECF No. 13] should be rejected for the same reasons explained above.  *See supra*, n.3.  Further, his concern that the *Douglas* complaint and PSLRA notice fail to adequately inform put sellers of the opportunity to move for lead plaintiff or for a subclass of put sellers is curious, given the complaint he filed included conflicting class definitions (compare *Atachbarian v. Norwegian Cruise Lines*, No. 1:20-cv-21386-CMA (S.D. Fla.), ECF No. 1 at ¶1 *with* ¶52), nor does it appear that he issued a PSLRA notice with his own complaint.

## III.     CONCLUSION

The only movant that suffered a greater loss than the Pension Trust Fund cannot make the

*prima facie* Rule 23 showing either collectively or individually.  Consequently, its motion should

be denied.  Similarly, because the movant with a smaller alleged loss than the Pension Trust Fund

cannot trigger the most adequate plaintiff presumption, his motion should likewise be denied.  The

Pension Trust Fund's motion should be granted.

 DATED:  May 26, 2020                                    Respectfully submitted,

                                                         ROBBINS GELLER RUDMAN & DOWD LLP
                                                         JACK REISE
                                                         Florida Bar No. 058149
                                                         SABRINA E. TIRABASSI
                                                         Florida Bar No. 0025521


                                                                *s/ Sabrina E. Tirabassi*
                                                           SABRINA E. TIRABASSI

                                                         120 East Palmetto Park Road, Suite 500
                                                         Boca Raton, FL  33432
                                                         Telephone:  561/750-3000
                                                         561/750-3364 (fax)
                                                         jreise@rgrdlaw.com
                                                         stirabassi@rgrdlaw.com

                                                         ROBBINS GELLER RUDMAN & DOWD LLP
                                                         DANIELLE S. MYERS
                                                         JUAN CARLOS SANCHEZ
                                                         655 West Broadway, Suite 1900
                                                         San Diego, CA  92101
                                                         Telephone:  619/231-1058
                                                         619/231-7423 (fax)

                                                         [Proposed] Lead Counsel for [Proposed] Lead
                                                         Plaintiff

- 17 -

CICCARELLO DEL GIUDICE & LAFON
MICHAEL J. DEL GIUDICE
1219 Virginia Street, East, Suite 100
Charleston, WV  25301
Telephone:  304/343-4440
304/343-4464 (fax)

Additional Counsel for [Proposed] Lead Plaintiff

- 18 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*s/ Sabrina E. Tirabassi*
SABRINA E. TIRABASSI
(Florida Bar No. 0025521)
