## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ERIC DOUGLAS, Individually and on behalf
of all others similarly situated,

        Plaintiff,

vs.

NORWEGIAN CRUISE LINES, FRANK J.
DEL RIO, and MARK A. KEMPA,

        Defendants.

Civil Action No. 1:20-cv-21107-RNS

---

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ABRAHAM ATACHBARIAN FOR APPOINTMENT AS LEAD PLAINTIFF OF THE OPTIONS CLASS

Movant Abraham Atachbarian ("Atachbarian") respectfully submits this memorandum of law:  (a) in opposition to the motions to consolidate and for appointment of lead, as further discussed below; and (b) in further support of his motion ("Motion") to the extent that it seeks an order providing for a class of options purchasers and sellers for the shares of Norwegian Cruise Lines ("Norwegian" or the "Company", the "Options Class")), his appointment as the Lead Plaintiff of the Options Class, and  the appointment of  his counsel, Stull Stull & Brody  ("SSB"), as lead counsel of the Options Class.

Atachbarian originally moved to be appointed as lead plaintiff of the consolidated action (the "Action") and to have his counsel appointed as lead counsel, or alternatively, as leads of an Options Class.  It is now evident from the seven other lead motions filed on May 11, 2000, and recent events, including Norwegian's  filing of a Form 8-K on May 5, 2020, in which it made a

1

"going concern" disclosure, and its Form 10-Q ("Form 10-Q") filed on May 15, 2020, in which it disclosed massive losses, that the creation of a class of options purchasers and put sellers is essential in this Action because options traders and common stock purchasers will each be seeking to maximize their own recovery from Norwegian's limited assets causing a conflict.  It is also evident that Atachbarian is the only movant who qualifies to act as the lead plaintiff for the Options Class.  *See* Declaration of Howard T. Longman in Further Support of Motion of Abraham Atachbarian to be Appointed Lead Plaintiff of an Options Class ("Longman Further Support Decl. at __"), Ex. A (attaching chart of movants and their alleged respective damages (the "Movant "Chart")).

Given the state of the cruise industry, and Norwegian's dire financial situation, the common stock purchasers, who will clearly be seeking the largest slice of any settlement or judgment will conflict with the options purchasers or put sellers, who similarly will be seeking to maximize their recovery from the same limited set of assets.  Norwegian was forced to cease cruises in mid-March and has been unable to resume them, resulting in its announcement in a Form 8-K on May 5, 2020, that its management has substantial doubt about its ability to continue as a "going concern". Longman Further Support Decl., Ex. B. Norwegian further announced that it was engaged in a series of transactions in order to provide it with liquidity and noted that the impact of the pandemic on its future financial health is unclear.  *Id.*  Its recent Form 10-Q indicates that is has suffered a loss for the quarter of $8.80 per share, in comparison to a gain of $.54 per share in the same quarter for the prior year.  Longman Further Support Decl., Ex. C.  It is evident that both the common stock purchasers and the options purchasers and sellers will be seeking compensation from a limited source of funds, which means that they will be in conflict, and that an Options Class with separate representation is necessary to sufficiently represent it and to ensure that it obtains its fair

share of any judgment or settlement. *See* Point I, *infra*. Where two classes of securities purchasers are in competition for the same set of limited assets for recovery, the creation of two classes with for each set of securities purchasers, with co-lead plaintiffs, is appropriate. *See Friedman v. Quest Energy Ptnrs. LP*, 261 F.R.D. 607, *610-611 (W.D. Okla. 2009)("*Friedman*").

As indicated on the Movant Chart, almost all of the movants are purchasers of common shares other than William C. Perry ("Perry"), a member of an unrelated, lawyer driven group of two (with Brian Mark Eddy ("Eddy", the "Perry/Eddy Group"), a common share purchaser), who has no damages recognizable under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005)("*Dura*"). Thus, he cannot be considered as a lead plaintiff of any class, much less the Options Class. *See* Point II, *infra*. Regardless of which common stock purchaser movant is the presumptive lead of the common stock purchaser class, none of them can qualify to represent the options purchasers and put sellers given the conflicts between the two classes of securities, as none could fulfill Rule 23's requirements of typicality or provide adequate representation given their divided loyalties.

Atachbarian, who sold put options during the Class Period, which were exercised forcing him to purchase shares which he held through the end of the Class Period is not only the most appropriate movant to be appointed a lead plaintiff of the Options Class, he is the only movant who is appropriate to lead that class or subclass. Moreover, he is the only movant who has sought to protect the options purchasers and put sellers by raising this issue and seeking to act as a fiduciary on their behalves. (Although Perry was an options purchaser and put seller, he does not seek to represent an options class in his lead motion). While courts in this jurisdiction are circumspect in appointing co-leads, they have repeatedly acknowledged that is appropriate in certain circumstances. *See* Point I, *infra*. The circumstances here, where there is a limited fund

3

over which both classes will be fighting, is just such an instance. *Id*. *See also* Motion of Abraham Atachbarian for Appointment as Lead Plaintiff and Approval of Lead Counsel and Incorporated Memorandum of Law (ECF No. 13) at 9-10.

Accordingly, Atachbarian urges the Court to allow for a separate Options Class and appoint him as the lead plaintiff of that class and his counsel as the lead counsel.

## Relevant Procedural History

On March 12, 2020, Plaintiff Eric Douglas filed the Class Action Complaint for Violations of the Federal Securities Laws (the "Douglas Complaint", the "Douglas Action"), on behalf of a class of *all persons and entities who purchased or otherwise acquired* the publicly traded securities of Norwegian. (ECF No. 1). On March 12, 2020, Douglas disseminated the requisite notice pursuant to the PSLRA*, on behalf of purchasers of the securities* of Norwegian Cruise Line Holdings Ltd. between February 20, 2020 and March 12, 2020. Declaration of Howard Longman In Support of Motion of Movant Abraham Atachbarian as Lead Plaintiff and Approval of Lead Counsel (previously filed) ("Longman Decl"). at Ex. A (ECF No. 14-1). Notably, the Notice said nothing about put sellers. *Id*. On March 31, 2020, Atachbarian filed his complaint on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Norwegian or *who sold put options on Norwegian securities*. Case No. 20-21386 (ECF No. 1) (the "*Atachbarian* Action"). On April 4, 2020, the Court issued an order consolidating the *Atachbarian* and *Douglas* Actions. (ECF No. 7). Atachbarian did not object to the consolidation as he intended to move to lead the options class and, in particular, put sellers who were damaged by the fraudulent scheme alleged in the complaints. On April 22, 2020, the action *Banuelos v. Norwegian Cruise Lines, et al.*, Civil Action No. 1:20-cv-21685 ("*Baneulos*")(ECF No. 1), was filed and was consolidated with the *Douglas* and *Atachbarian* Actions by order dated May 12,

4

2020 (ECF No. 12), after motions to consolidate were filed.  (ECF Nos. 5, 6 and 8). *Banuelos* was similarly brought only *on behalf of purchasers of Norwegian securities*.

On May 11, 2020, pursuant to the Notice and the PSLA, eight motions for lead and to consolidate were filed.  *See* Longman Further Support Decl., Ex. A.  All of the movants, other than the Perry/Eddy Group, are common stock purchasers and thus do not have standing to represent options purchasers or put sellers.  The first five movants, moreover, do not have the largest financial interest as required under the PSLRA.[1]  Although Perry was an options trader and put seller, as discussed above and in Point II, *infra*, the Perry/Eddy Group suffers from disabling issues including  Perry's lack of damages under *Dura*, and the fact that they constitute an unrelated, lawyer driven group.  The motions submitted make clear that it is only Atachbarian who can be appointed as the lead plaintiff of a separate options class or subclass, and, as discussed below, such as a class or subclass is necessary here.

## Argument

### Point I

### The Court Should Approve an Options Class and Appoint Atachbarian and his Counsel as Lead Plaintiff and Lead Counsel, Respectively

#### A.  There is a Disabling Conflict Between the Common Stock Purchasers and the Options Traders Requiring Co-Leads

Generally, the PSLRA creates a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C.§78u-4(a)(3)(B)(iii)(I).  Where, however, a class of common

---

1.    Atachbarian believes that the Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund (the "Pension Fund") is likely the most adequate movant and to be appointed as lead plaintiff on behalf of *common stock purchasers.  See* Longman Further Support Decl., Ex. A.  As of the time of this filing, Movants Dat N. Le, Tumurcuoglu, Hurduise, Pagen and Keefe, and Myint have filed notices that they no longer seek lead. (ECF No.'s 28 and 30).

stock purchasers, and their presumptive lead have conflicts with members of another class of securities, such as the option purchasers and put sellers here, that presumptive lead cannot satisfy the typicality or adequacy provisions of Rule 23.  *Friedman,* 261 F.R.D. at *610-611.  In that instance, courts have allowed a second lead plaintiff to be appointed.  *Id.*   Given Norwegian's failing financial situation and its going concern disclosure, it is evident that common stock purchasers and options traders will be unable to obtain full recoveries of their damages, giving rise to a conflict as they both seek recovery from the same limited fund.  Both the common stock purchasers and the Options Class will be competing for recovery from a single limited fund.  The presumptive lead here, which will be a common stock purchaser, will have an interest in pursuing claims that increase the recovery for those securities purchasers even at the expense of the options traders, making it an inadequate representative of options purchasers and sellers.

This was precisely the situation in *Friedman,* 261 F.R.D. 607, which prompted the court to appoint separate and independent lead plaintiffs to represent two separate classes:  one on behalf of purchasers of partnership units, and one on behalf of the purchasers of common stock.  As the *Friedman* court explained, a lead plaintiff must satisfy the requirements of Rule 23, including maintaining common interests with the class and a willingness to vigorously prosecute the action. Where there is a conflict, such as where both classes "are competing for recovery from a common set of defendants whose assets constitute the single limited fund from which the competing classes will obtain recovery", and neither class is likely "to be able to obtain complete recovery", "a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited fund." *Id.* at *610. (cites omitted).  In that instance, given the conflict, the presumptive lead cannot

6

satisfy the requirements of Rule 23 for both classes necessitating the appointment of a separate lead.

Courts in this jurisdiction have been receptive to appointing co-leads under appropriate circumstances. *See, e.g., Einhorn v. Axogen, Inc.*, 8:19-cv-69-EAK-AAS, 2019 U.S. Dist. LEXIS 195312, at \*9-11 (M.D. Fla. April 30, 2019); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, at \*1303 (M.D. Fla. 2000)(explaining that co-leads may detract from the PSLRA's fundamental goal of client control, but acknowledging that there are circumstances in which it may be appropriate); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 8:06-cv-1716-T-23EAJ, 2007 U.S. Dist. LEXIS 3592, at \*12 (M.D. Fla. Jan. 18, 2007) (noting that co-lead counsel may be appointed in appropriate circumstances). This is just such a circumstance in which the presumptive lead is inadequate to represent the Options Class.

**B.   The Common Stock Purchaser Class and the Options Class
     Have Different Damages and Require Different Evidence**

Given the conflicts engendered by Norwegian's dire financial circumstances, the presumptive lead will have little incentive to fully prosecute the claims of the Options Class, which will require different evidence for certification and for the determination of damages. For instance, the Norwegian options were traded on the Chicago Board Options Exchange or the CBOE during the Class Period, while the common stock was traded on NASDAQ. Each of those exchanges has different hours and trading characteristics, and any efficient market analysis sufficient to support certification of the respective classes, will require different evidence and expert testimony. There were more than 100 different call and put options that were open during the Class Period, with different features. All of this would have to be factored into an analysis of the price impact of the alleged misrepresentations and would require a separate events study analysis to determine the price impact of alleged misrepresentations beyond one performed for the common stock.

7

Moreover, the issue of whether a purchaser or seller of an options contract suffered damage is a complex one, and option premiums must be factored into the premium paid and/or received to determine damages.  These are calculations that do not have to be made for the purchasers of common stock.

A lead plaintiff who did not trade options has little incentive to spend its time and energy amassing this type of evidence pertinent only to options traders, especially given the limited assets available for recovery.  In fact, they have failed to do so in other cases.  *See, e.g.*, *In re American Realty Capital Properties, Inc. Litig*., No. 1:15-mc-000040-AKH (S.D.N.Y. June 16, 2019) ("*ARCP*"),  Longman Decl., Ex. D (ECF No. 14-1) (Court rejected lead counsel's argument that the class included options purchasers, in light of defendants' argument that insufficient evidence supporting certification of that class was presented.  The Court noted that certification of an options class involves different considerations than certification of a common share purchaser class).

Moreover, lead plaintiffs who have not traded in options have often failed to assert claims on behalf of options traders—leaving options traders with no recourse.  *See, e.g., In re Valeant Pharms. Int'l, Inc. Secs. Litig.*, 15-cv-7658 (MAS)(LHG), 2018 U.S. Dist. LEXIS 191439, at *18019 (D.N.J. Nov. 7, 2018) ("*Valeant*") (class definition excluded sellers of put options); *In re New Oriental Educ. & Tech. Group Secs. Litig.*, 293 F.R.D. 483, *486-88 (S.D.N.Y. 2013) (claims of options traders severed after lead plaintiff failed to include the options trader claims).

Atachbarian believes that the presumptive lead plaintiff for the common share purchasers is likely to be the Pension Fund.  However, the Pension Fund does not claim to have purchased or sold any options, nor does it seek to represent options traders. *See* Declaration of Sabrina E. Tirabassi in Support of Motion of Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection

of Counsel, 20-21107 (ECF. No. 19) at Exhibit B.[2]  Neither it nor any other movant makes a commitment that it will assert claims on behalf of options purchasers and sellers, although they were aware that Atachbarian included them in his class definition in his Class Action Complaint for Violations of the Federal Securities Laws.  20-cv-21386-RNS (ECF No. 1).  In fact, they could not make that commitment as they do not have standing to represent options purchasers or put sellers.[3]  *See In re Am. Italian Pasta Co. Sec. Litig.*, 05-cv-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at *24-25  (W.D. Mo. Mar. 26, 2007)("*American Italian*") (noting that a lead plaintiff who did not trade options cannot be lead on behalf of a class of options traders).

Further, in another action, the Pension Fund's counsel has been accused of giving short shrift to options traders in crafting a plan of allocation of a settlement fund.  *In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*, Case No. 3:15-cv-07658.  Although the *Valeant* action was settled for a substantial sum, a recent objection to the settlement disclosed that the lead plaintiff and common share purchaser failed to adequately prosecute the claims of options traders, and crafted a plan of allocation of the settlement fund that failed to provide options traders with their *pro rata* share of the fund (the "Objection")(ECF No. 557).  Longman Further Support Decl., Ex. D.  According to the Objection, the plan of allocation of the settlement fund provided preferential

---

2.     While the Pension Fund argues for consolidation of all the presently filed actions, including the *Atachbarian* Action, it seeks only to represent securities purchasers during the Class Period and not put sellers.  Motion and Incorporated Memorandum of Law of Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel. (ECF No. 18 at 1). Lead Counsel for the Pension Fund, Robbins Geller Rudman & Dowd, was the lead counsel in both the *ARCP* and *Valeant* cases.

3.     This is true even if another movant is appointed lead of the common share purchaser class. Other than Perry, who has no damages, no other movant has standing to assert claims on behalf of the Options Class or any incentive to fully litigate those claims on their behalves.

treatment to Valeant's common stockholders and certain of its debtholders—a hazard that was apparently occasioned by the absence of a separate lead plaintiff on behalf of the options traders.

All of these factors, in addition to the conflicts between the two classes, augur in favor of appointing two classes here, with Atachbarian as the lead plaintiff for the Options Class.   There is support for doing so.  *See, e.g., Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398 (D. Minn. 1998) (separate leadership appointed for a class of option traders); *American Italian*, 05-cv-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at \*24-25  (noting that a lead plaintiff who did not trade options cannot be lead on behalf of a class of options traders).

**Point II**

**<u>The Perry/Eddy Group Cannot Be Appointed as Lead Plaintiff</u>**

The only other movant to have traded options and sold put options is Perry, one half of the Perry/Eddy Group.  Neither that group nor Perry qualifies for lead.

**A.  <u>Perry Has No Losses Under</u> *Dura***

The Perry/Eddy Group contends that it has aggregate damages of $267,807.80. *See* Declaration of Benjamin Widlanski in Support of William C. Perry and Brian Mark Eddy's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("Widlanski Decl."), Ex. B (ECF No. 24, 24-2).  According to the Perry/Eddy loss calculation chart, Widlanski Decl., Ex. B, $70,489.80 of the total purported loss sustained by the group (on a LIFO basis) is attributable to Eddy, while $197,318 of the loss is attributable to Perry.  *Id*.  As the loss chart demonstrates, however, ***all*** of Perry's transactions occurred within the Class Period and before the disclosure of the truth.  By the end of the Class Period on March 12, 2020, when the truth about Norwegian was revealed, Perry had no position in any Norwegian security. Although Perry may be able to claim he engaged in transactions in Norwegian options at "artificially inflated

prices", he is not able to claim a loss compensable under the securities laws because his loss was not caused by the disclosure of the truth.  He therefore suffered no damage under *Dura*.

According to *Dura* in order to demonstrate loss causation, the plaintiff must show "the causal connection between the material misrepresentation and the loss [incurred]".  *Tung v. Dycom Indus.*, No. 19-cv-81448, 2020 U.S. Dist. LEXIS 65550, at *26  (S.D. Fla. Apr. 14, 2020) (citing *Dura* at 342). Thus, the plaintiff must show that  "the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement[s] or omission[s] concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* citing *In re PainCare Holdings Secs. Litig*., 541 F. Supp. 2d 1283, 1293-94 (M.D. Fla. 2008). A movant must allege that the price of the company's securities declined after defendants' misconduct was disclosed to the public.  *Cole v. Health Mgmt. Assocs.*, No. 2:07-cv-484-FtM-34SPC, 2008 U.S. Dist. LEXIS 128021, at *15 (M.D. Fla. May 14, 2008) (*citing Dura* at 344-45). These requirements cannot be satisfied where the movant has sold out his entire position before the disclosure of the truth.  Moreover, this Court has made clear that *Dura* applies with equal force in determining a potential lead plaintiffs' financial interest.  *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064, at *6, fn. 4 (S.D. Fla. Dec. 6, 2018) ("Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute potential recoverable losses .... failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation.") (citing *Khunt v. Alibaba Group Holding Ltd.,* 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015)) ("*Khunt*").

Furthermore, even pre-*Dura* under Rule 23 principles regarding class certification, the presumption that a lead plaintiff is the one with the greatest losses was rebutted where the movant

11

was an "in-and-out trader", like Perry, who would have to spend a considerable amount of time trying to establish that his losses were caused by the fraudulent conduct. *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *18-19 (N.D. Ill. Mar. 15, 2005). Because Perry sold out his entire position before the March 12, 2020 disclosure of the truth regarding Norwegian, he has no damages under *Dura*, and cannot be a lead plaintiff.

### B. The Perry/Eddy Group is Unrelated and Lawyer Driven

Perry further cannot be appointed as lead because he chose to move as part of a lawyer driven, unrelated group of investors. Although the PSLRA allows groups to serve as lead plaintiff, appointing unrelated groups which have been cobbled together by attorneys so that they can claim their group has the greatest financial interest, frustrates the purpose of the PSLRA. *See, e.g.*, *Brustein v. Lampert*, No. 04-61159-CIV, 2005 U.S. Dist. LEXIS. 51106, at *18-21 (S.D. Fla. June 16, 2005). *Khunt,* 102 F. Supp. 3d at 533 (rejecting the lead application of a group of investors where they "admit to having no pre-litigation relationship, having been introduced to each other 'through our counsel'" and "their only involvement in the litigation thus far appears to have been a single conference call.")

This Court favors the approach taken in *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F.Supp.2d 388 (S.D.N.Y. 2008). *See Carvelli v. Ocwen Fin. Corp.,* No. 17-80500-CIV-ROSENBERG/HOPKINS, 2017 U.S. Dist. LEXIS 222283 (S.D. Fla. July 14, 2017), at fn.8 ("*Carvelli*"). In *Varghese,* the Southern District of New York set forth standards for determining when a "group" is an appropriate lead plaintiff under the PSLRA, holding that for a "group" of investors to be adequate and proper, the proposed group:

> must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group

members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Id*. at 392.

Clearly the Perry/Eddy group is lacking in several of the above basic factors, starting with the absence of any relationship prior to this litigation. *See* Widlandksi Decl., Ex. D, Joint Declaration of William C. Perry And Brian Mark Eddy in Support of Their Motion for Consolidation, Appointment As Lead Plaintiff and Approval of Selection of Lead Counsel, at ¶ 6 (ECF No. 24-4). Perry lives in Hawaii and Eddy lives in Alabama. *Id*. at ¶¶ 2,4. Perry was solicited by The Schall Law Firm ("Schall"), a stalking horse for larger law firms, through the dissemination of a press release. Schall then shuttled Perry to Labaton Sucharow LLP ("Labaton), which Perry currently declares is his choice for lead counsel. *Id*. at ¶ 3. The Perry/Eddy Group's "plans for cooperation" (factor 3 above) are highly suspect as both conveniently describe, in identical terms, their "desire" to be part of a "group". Both repeat verbatim the same lawyer drafted verbiage: that they "expressed an interest in serving as Lead Plaintiff, including doing so alongside a group of similarly-situated investors.". *Id*. at ¶¶ 3, 5. Subsequently, Labaton and Bernstein Leibhard LLP, who had been contacted by Eddy, *Id*. at ¶ 5, arranged a conference call at which the two movants "met telephonically". *Id*. at ¶9. Although the two movants declare that they discussed cooperating in prosecuting the action and maintaining independent communication with each other and exchanged contact information (*Id*. at ¶¶11-12), it is apparent that this "group" was cobbled together by attorneys attempting to secure lead, and is precisely the kind of lawyer driven group of unrelated individuals that courts in this District and others have found to be unacceptable. As stated by this Court in *Carvelli*, 2017 U.S. Dist. LEXIS 222283, at *14:

> …[C]ourts routinely reject lead plaintiff applications filed by groups of investors who are "simply an artifice cobbled together by cooperating counsel for the obvious purpose of

creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel' . . .

The Court in *Carvelli* was mindful that Congress intended the PSLRA to prevent "lawyer driven" litigation. *Id*. That is precisely what the Perry/Eddy Group is. Perry should therefore be disqualified from being appointed as lead plaintiff for any Options Class.

## <u>Conclusion</u>

Based upon the foregoing, Atachbarian respectfully requests that the Court issue an order: (1) providing for a separate Options Class; (2) appointing him as Lead Plaintiff of the Options Class; and (3) appointing SSB, his chosen counsel, as Lead Counsel of the Options Class.

Dated: May 26, 2020

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz
EGGNATZ PASCUCCI, P.A.
7450 Griffin Road, Suite 230
Davie, FL 33314
Email: JEggnatz@JusticeEarned.com
Tel: (954) 889-3359
Fax:   (954) 889-5913

*Local Counsel for Movant Abraham Atachbarian*

Howard T. Longman
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022
Email:  hlongman@ssbny.com

*Lead Counsel for Movant Abraham Atachbarian and Proposed Lead Counsel for the Options Class*

Lynda J. Grant
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175

14

Tel: (212) 292-4441
Fax: (212) 292-4442
E-mail: lgrant@grantfirm.com

**_Counsel for Movant Abraham Atachbarian
and the Proposed Options Class_**

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2020 a true and correct copy of the foregoing was served via the Court's CM/ECF filing system on counsel of record in this action.

_/s/ Joshua H. Eggnatz_
Joshua H. Eggnatz

15