UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ERIC DOUGLAS, Individually and on behalf
of all others similarly situated,

          Plaintiff,

vs.

NORWEGIAN CRUISE LINES, FRANK J.
DEL RIO, and MARK A. KEMPA,

          Defendants.

Civil Action No. 1:20-cv-21107-RNS

---

**MEMORANDUM OF LAW IN REPLY TO COMPETING MOTIONS AND IN
FURTHER SUPPORT OF MOTION OF ABRAHAM ATACHBARIAN FOR
APPOINTMENT AS LEAD PLAINTIFF OF THE OPTIONS CLASS**

Preliminary Statement

Movant Abraham Atachbarian ("Atachbarian") submits this memorandum of law in reply to the competing motions for appointment of lead plaintiff by the Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund (the "Pension Fund"), and William C. Perry ("Perry") and Brian Mark Eddy ("Eddy", with Perry, the "Perry/Eddy Group")—the only other remaining movants. He also submits this reply memorandum in further support of an order providing for a co-lead plaintiff structure consisting a class of common share purchasers and an options purchaser and put seller class (the "Options Class"),  with separate lead plaintiffs and lead counsel.  He seeks his appointment as lead plaintiff of the Options Class and his counsel's appointment as lead counsel of the Options Class.  In connection with his motion, Atachbarian is also submitting the

1

Declaration of Abraham Atachbarian in Further Support of His Motion to be Appointed Co-Lead (the "Atachbarian Decl.", "Atachbarian Decl., Ex. __").[1]

The last round of briefing makes clear that that the presumptive lead plaintiff for the class of common share purchasers is the Pension Fund.  As both the Pension Fund's Memorandum of Law in Opposition to Competing Motions for Appointment of Lead (the "Pension Fund Br. at __")(ECF No. 34), and Atachbarian's Memorandum of Law in Further Support of Motion of Abraham Atachbarian for Appointment as Lead Plaintiff of the Options Class (the "Atachbarian Memorandum", "Atachbarian Mem. at __")(ECF No. 36) indicate, Perry, the movant who purportedly contributed the largest portion to the aggregate damages claimed by the Perry/Eddy Group, cannot show loss causation and therefore has no damages under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005)("*Dura*").  Atachbarian Mem. at 10-12; Pension Fund Br. at 8.  Perry has also been the subject of criminal proceedings. Supplemental Declaration of Sabrina E. Tirabassi in Support of Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead (the "Supp. Tirabassi Decl.") at Exhibits 1-3; Pension Fund Br. at 11-13.  Moreover, Perry and Eddy constitute an unrelated, lawyer driven group, cobbled together by counsel solely for purposes of obtaining lead. Atachbarian Mem. at 12-14; Pension Fund Br. at 4-8.[2]

The Pension Fund, as the presumptive lead with respect to common stock purchasers, admits that are there are significant differences between the common purchasers that it seeks to represent, and options traders, such that as Atachbarian asserts, there should be two separate

---

[1] The Perry/Eddy Group says little about Atachbarian other than that he purportedly failed to provide sufficient information about himself. Memorandum of Law in Further Support of the Motion of William C. Perry and Brian Mark Eddy for Appointment As Lead Plaintiff, Approval of Their Selection of Lead Counsel, and In Opposition to the Competing Motions (the "Perry/Eddy Br.") (ECF No. 38) at 10. Atachbarian disagrees. *See* Point II, *infra*. Atachbarian, nonetheless, filed a declaration along with this memorandum.

[2] For the same reasons, Perry cannot be appointed as lead of a separate class of options traders. Of course, Perry did not seek that position.  Atachbarian Mem. at 3, 9 note 3.

classes and co-lead plaintiffs. Those differences include valuation differences, issues regarding maturity of the options, the volatility of the market for the options, the level of short-term interest rates and the competitive structure of the market, among other things. Atachbarian Mem. at 7-8; Pension Fund Br. at 10. Given those distinctions, in other cases, courts have recognized the need to appoint a separate options class, with a separate lead plaintiff and lead counsel. *See, e.g., Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398 (D. Minn. 1998) (separate leadership appointed for a class of option traders); *In re Am. Italian Pasta Co. Sec., Litig.*, 05-cv-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at *24-25 (W.D. Mo. Mar. 26, 2007)(noting that a lead plaintiff who did not trade options cannot be lead on behalf of a class of options traders). *See also* Supplemental Declaration of Benjamin Widlanski In Support of William C. Perry and Brian Mark Eddy's Motion for Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel (the "Supp. Widlanski Decl.")(ECF No. 39) at Exhibit B (appending a stipulation and order entered in *Wallerstein v. Netflix, Inc, et al.*, Case No. 5:19-cv-04195-LHK (N.D. Cal. Jan. 31, 2020), approving a co-leadership structure with a separate options class, similar to that advocated here).

Even more to the point, there are irreconcilable conflicts between the two classes. While some courts have disfavored appointing a separate options class, *see* Pension Fund Br. at 10, note 3 (and cases cited therein), there are two overarching factors which require appointing one here:  one, Norwegian Cruise Lines ("Norwegian")'s announcement that there is substantial doubt that it can continue as a going concern, and two, the Pension Fund's counsel's failure in two other major class actions to sufficiently represent options traders. *See* Atachbarian Mem. at 2, 6, 9; Declaration of Howard T. Longman in Further Support of Motion of Abraham Atachbarian for Appoint as Lead Plaintiff of the Options Class (the "Longman

Supp. Decl.")(ECF No. 37) at Exhibits B-D. As argued in the Atachbarian Memorandum, where there are two different classes of securities purchasers seeking to maximize their recoveries from a limited set of assets, a disabling conflict arises which requires the appointment of co-lead plaintiffs and counsel. Atachbarian Mem. at 5-7. That conflict is exacerbated here by the fact that the Pension Fund's counsel, the likely lead counsel, has focused on the claims of common share purchasers at the expense of options traders in two other class actions. *Id.* at 8-9; Longman Supp. Decl., Exhibit D. It is apparent that options traders in this instance need separate representation so that they will be sufficiently protected and can obtain their fair share of any settlement or judgment.

Atachbarian is the appropriate person to be appointed as lead plaintiff of the Options Class. Contrary to the Pension Fund's assertions, Pension Fund Br. at 15 n. 5, Atachbarian did not sell out of his position on March 3 and before the truth was disclosed and was not an "in-and- out purchaser" like Perry. As demonstrated in the Declaration of Howard T. Longman In Support of Motion of Movant Abraham Atachbarian for Appointment As Lead Plaintiff and Approval of Lead Counsel ("Longman Moving Decl."), Ex. C (ECF No. 14-1)(Atachbarian Loss chart), during the Class Period, Atachbarian purchased put options which were exercisable at the inflated price of $50 per share, based upon Norwegian's misrepresentations causing him to believe that the price of the shares were going to increase or at least be maintained. On February 28th and March 3rd, Norwegian shares were put to him at an inflated price in accordance with the terms of the option contracts, so that he was forced to purchase 2,000 shares at $50 per share. He held those shares through the end of the Class Period on March 12th when the truth was disclosed, and continues to hold them. He was thus damaged by the alleged fraud because he continued to maintain a position in Norwegian securities until the end of the Class Period which was a direct consequence of the

exercise of the put options that he traded.   Even if the put had not been exercised, and he held the option after the close of the Class Period (February 20-March 12, 2020), he still would have suffered *Dura* damages.  *See* Point II, *infra*.  This is wholly different than Perry, who completed all his trading in Norwegian put options before the end of the Class Period, and thus had no damages under *Dura*.  *Id*.  Moreover, Atachbarian, an electrical engineer and former member of the United States Air Force, who has worked at Edwards Air Force Base for over thirty years, is an experienced securities and options trader.  He has a portfolio with a focus on airline and cruise company shares.  Atachbarian Decl., ¶¶3-4, 7-8.  His claims arise from the same facts and circumstances as those of the common share purchasers and other options traders and he is more than adequate and willing to fulfill a role as the lead plaintiff of an options class.  *See Id*., at ¶¶ 3-5, 11-12.

In short, neither the Perry/Eddy Group nor the Pension Fund has raised any issue that undercuts Atachbarian's argument that a co-lead structure, with a separate class for options traders should be appointed here, and that he and his chosen counsel, Stull Stull & Brody ("SSB"), should be appointed as lead plaintiff and lead counsel respectively, of the Options Class.

**<u>Argument</u>**

Point I

**<u>The Common Purchaser Class and Options Class Have</u>**
**<u>Irreconcilable Conflicts Requiring Separate Representation</u>**

As Atachbarian previously argued, given the conflicts between the two proposed classes, this is a circumstance in which a co-lead plaintiff structure should be appointed.  Atachbarian Mem. at 5-10.  There is little question that where conflicts exist, the court should protect the class of non-common securities purchasers by appointing a co-lead plaintiff on their behalves.  *See*

*Friedman v. Quest Energy Ptners. LP*, 261 F.R.D. 607 (W.D. Oka. 2009)(explaining that a conflict arises where two class of securities purchasers seek recovery from a limited set of assets). *See also Miller v. Ventro Corp.*, No. C 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027, at *36-39 (N.D. Cal. Nov. 28, 2001)(appointing a stockholder and bondholder as co-lead plaintiffs)("*Miller*"). As the *Miller* court explained, although courts are reluctant to appoint co-lead plaintiffs, they do so when there is a conflict between the classes such that purchasers of securities other than common shares are in need of protection. *Id.* at *36. That reasoning applies with great force here. The Pension Fund does not address this issue and relegates its entire response to the co-lead plaintiff issue to a footnote. Pension Fund Br. at 10, note 3. It cites three irrelevant cases, none of which address the issue of the appointment of co-leadership where conflicts exist.[3]

The Pension Fund further spends a significant portion of its brief arguing that an options trader (Perry) should be not be sole lead. Pension Fund Br. at 9-10.[4] Of course, Atachbarian does not seek to be sole lead, so that is argument is irrelevant as to him. Nonetheless, the reasoning employed by the Pension Fund in advancing that argument and the cases that it cites, further support Atachbarian's argument that a separate options class with separate representation should be appointed as there are issues particular to options traders not shared with common share purchasers. *See Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS

---

[3] *Richman v. Goldman Sachs Grp.*, 274 F.R.D. 473 (S.D.N.Y. 2011); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13 (D.D.C. 2006), and *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal. April 28, 2016).

[4] The Pension Fund also argues that Perry cannot be a lead plaintiff of a common share purchaser class because options are not securities issued by Norwegian. *See* Pension Fund. Br. at 9. This argument does not apply to Atachbarian who acquired the Norwegian common shares put to him on February 28th and March 3rd, and who does not seek to represent the common share purchasers. *See* Point II, *infra*. Moreover, it is specious as both options traders and common stock purchasers are similarly damaged by relying on the integrity of the market for a company's shares. *See Moskowitz v. Lopp*, 128 F.R.D. 624, 635 (E.D. Pa. 1989) ("[a]n option trader is likewise injured by insider trading in the underlying shares since the price of the option is directly related to the price of the stock.").

98255, at *11 (N.D. Cal. Sept. 20, 2020)(noting that the valuation of options and commons stock would likely differ); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391-92 (D.N.J. 1998)(a class certification decision in which the court noted the differences between options and common shares and that the evidence needed on class certification would be different)("*Weikel*"); *Andrada v. Atherogenics, Inc.*, 05 Civ. 00061, 2005 U.S. Dist. LEXIS 6777, at *14-15 (S.D.N.Y. April 19, 2005) (citing *Weikel* and explaining that options may raise different issues than common shares, including maturity, volatility, short term interest rates, and the structure of the market). These differences, along with the conflicts here, are precisely why a separate class is necessary. *See* Longman Moving Decl., Ex. D (Endorsed Opinion in *In re American Realty Capital Properties, Inc. Litig.*, No. 1:15-mc-000040-AKH (S.D.N.Y. June 16, 2019)(ECF No. 853) in which the Pension Fund's proposed counsel here failed to adduce sufficient evidence specific to options traders to win certification of an options class in an action that was eventually settled for over $1 billion, but from which options traders obtained no recovery). It is evident that this is a circumstance in which co-lead plaintiffs should be appointed, so that options traders can occupy a decision-making role in the litigation and ensure that they are protected.

Point II

**Atachbarian is the Presumptively Most Adequate**
**Plaintiff to Represent the Options Class**

Atachbarian is presumptively the most adequate plaintiff to represent the Options Class. Although the intent of the PSLRA is to determine the plaintiff most capable of pursuing an action and representing the interests of a class, at this point "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification." *Fishler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D.

Fla. 1997). The inquiry, therefore, focuses on the qualities of the class representatives enumerated in Rule 23(a)(3) and 23(a)(4), typicality and adequacy; that is will the movant fairly and adequately represent the class. *Id*. at *8-9.

First, Atachbarian has the largest financial interest of any options movant. Unlike Perry, he has damages under *Dura* through the exercise of his options. Longman Moving Decl., Ex. C (ECF No. 14-1). The Pension Fund consigns its primary discussion of Atachbarian to a footnote, Pension Fund Br. 15, at note 5, incorrectly arguing that Atachbarian's losses are attributable to "options *purchases*", when, of course, Atachbarian asserts that his damages were caused by his *sale* of put options The Pension Fund further incorrectly attempts to argue that Atachbarian, like Perry, had no exposure to the March 12th drop in Norwegian's share price because his options contracts were exercised and the Norwegian shares put to him by March 3rd. However, he is unlike Perry, because he was forced to purchase shares at an inflated price directly because of his sale of the put options and continued to hold the 2,000 shares he purchased through the disclosure of the truth on March 12th. In other words, his *Dura* damages were directly caused by his sale of put options.

The Pension Fund argues that Atachbarian did not have damages because he did not have an open put contract at the end of the Class Period. That argument has little substance, since Atachbarian would have sustained *Dura* damages even if he sought to cover his open contract after March 12 or the shares were put to him after March 12th. Before expiration of the contract (the third week in March), Atachbarian was obligated to purchase 2,000 shares of Norwegian stock at $50 per share when the shares that were worth approximately $9.65 per share by the end of the Class Period. If the shares had been put to Atachbarian after March 12, but before expiration of the contract (the third week in March), he would have been forced to purchase the same 2,000

shares at the same price, suffering the same damages. If Atachbarian instead chose to close his position on or after March 12, so that he held the put contracts on March 12th, he could have purchased 20 March 50 puts at a price of approximately $38.00 per contract, and would have sustained a loss of approximately $34.00 per share—essentially the same damages that he did sustain and damages recognizable under *Dura*. Consequently, the fact that Atachbarian did not have an open put contract on March 12th does not undercut his claim for lead plaintiff.

Second, Atachbarian satisfies the typicality requirement because his claims arise out of the same facts and circumstances and legal issues as other options traders in Norwegian shares during the Class Period, and as the common shareholder claims, as the Court already found in consolidating the *Atachbarian* and *Douglas* Actions. S*ee* ECF No. 7. *McIlvaine v. Arthocare Corp.*, Case No. 08-80343-CIV-RYSKAMP/VITUNAC, 2008 U.S. Dist. LEXIS 130944, at *10 (S.D. Fla. July 16, 2008)("*McIlvaine*")(citing *Miller v. Dyadic Intern., Inc.*, 07-80948-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 32271, at *19 (S.D. Fla. April 18, 2008)("*Miller*") (typicality established where movant's claims arise out of same facts and circumstances as rest of class). Third, Atachbarian has made a showing of adequacy in having selected an experienced counsel able to handle and to conduct the litigation and has a sufficient interest in the outcome to show that he would vigorously litigate the action. *McIlvaine*, 2008 U.S. Dist. LEXIS. 130944, at *10, citing *Miller*, 2008 U.S. Dist. LEXIS 32271 (adequacy established where class counsel is qualified, class members' interests are not antagonistic, and the class has sufficient interest to ensure vigorous advocacy). In fact, he was only one of two movants who filed a complaint given that he had over $71,000 in losses. Longman Moving Decl., Ex. C.[5] A simple docket search would

---

[5] That complaint explicitly pleads that it is brought on behalf of put sellers, as wells as those who purchased or otherwise acquired Norwegian securities. *See* Case No. 20-21386 (ECF No. 1) at ¶52. Atachbarian did not disseminate a new notice because the Court had already consolidated his case with the *Douglas* Action, finding that the cases were similar. (ECF No. 7).

have disclosed that Atachbarian has twice sought to act as a class representative in other putative class actions, and thus has experience in sophisticated class action litigation. *See* Atachbarian Decl., ¶13. A presumption that he is the most adequate movant (and the only movant) to represent an options class thus arises. Significantly, neither the Perry/Eddy Group nor the Pension Fund has credibly argued that Atachbarian has any conflict that would disqualify him from being lead plaintiff of the Options Class.[6]

Conclusion

Based upon the foregoing, Atachbarian respectfully requests that the Court issue an order: (1) providing for a separate Options Class; (2) appointing him as Lead Plaintiff of the Options Class; and (3) appointing SSB, his chosen counsel, as Lead Counsel of the Options Class.

Dated: June 2, 2020

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 67926
Email: JEggnatz@JusticeEarned.com
**EGGNATZ PASCUCCI, P.A**.
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax:   (954) 889-5913

***Local Counsel for Movant Abraham Atachbarian***

Howard T. Longman, Esq.
Email: hlongman@ssbny.com
**STULL, STULL & BRODY**
6 East 45th Street

---

[6] The Perry/Eddy Group argues that Atachbarian has not submitted sufficient information for the Court to assess his adequacy and typicality. Perry/Eddy Br. at 10. The two cases on which it relies, *Perez v. Hexo*, 19 Civ. 10965 (NRB), 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020)("*Perez*") and *Karp v. Diebold Nixdorf, Inc.*, 19 Civ. 6180 (LAP), 2019 U.S. Dist. LEXIS. 188670 (S.D.N.Y. Oct. 30, 2019)("*Karp*") are not authority from this Court. Moreover, they contradict relevant case law which holds that a court should not engage in a wide-ranging inquiry at the lead plaintiff appointment stage, as discussed above. Further neither *Perez* nor *Karp* addresses the situation where a movant seeks only a co-lead rather than a sole lead position—the situation here. Finally, the Atachbarian Declaration provides further information regarding Atachbarian.

New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

***Counsel for Movant Abraham Atachbarian
and Proposed Lead Counsel for the Class***

Lynda J. Grant, Esq.
E-mail: lgrant@grantfirm.com
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

***Counsel for Movant Abraham Atachbarian
and the Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2020 a true and correct copy of the foregoing was served via the Court's CM/ECF filing system on counsel of record in this action.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 67926
Email: JEggnatz@JusticeEarned.com
**EGGNATZ PASCUCCI, P.A.**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913

***Local Counsel for Movant Abraham Atachbarian***

11