UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21107-Civ-SCOLA
(Consolidated with No. 20-21386 and 20-21685)

| | | |
|---|---|---|
| ERIC DOUGLAS, Individually and on Behalf of All Others Similarly Situated, | ) ) | <u>CLASS ACTION</u> |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NORWEGIAN CRUISE LINES, et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

**EMPLOYER-TEAMSTERS LOCAL NOS. 175 & 505 PENSION TRUST FUND'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
<u>FOR APPOINTMENT AS LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT...........................................................................................................2

      A.     The Pension Trust Fund Is the "Most Adequate Plaintiff" ......................................2

      B.     The Individual Investors Group Cannot Be Appointed ...........................................5

      C.     Atachbarian Does Not Qualify for the Lead Plaintiff Presumption and, in Any Event, Does Not Satisfy Rule 23 ....................................................................8

III.   CONCLUSION..........................................................................................................9

Proposed Lead Plaintiff Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund ("Pension Trust Fund") respectfully submits this reply memorandum in further support of its motion for appointment as Lead Plaintiff. [1]

## I.      PRELIMINARY STATEMENT

Pursuant to the PSLRA, movants seeking to be appointed lead plaintiff are required to demonstrate they have the "largest financial interest in the relief sought by the class" ***and*** "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Of the three remaining lead plaintiff movants, only the Pension Trust Fund qualifies under ***both*** prongs of the PSLRA's lead plaintiff requirements.  Unlike the remaining movants, the Pension Trust Fund meets all of the statutory requirements as it filed a timely motion, suffered a substantial $136,074 loss, satisfies Rule 23's requirements, is not subject to any unique defenses, and, as an institutional investor with prior experience serving as lead plaintiff in a securities case that selected qualified counsel, it is the quintessential lead plaintiff candidate.  *See id*.

For the reasons articulated below and more fully in the Pension Trust Fund's Opposition, neither the Individual Investors Group nor Abraham Atachbarian can trigger the PSLRA's most adequate plaintiff presumption because they suffer from a host of disqualifying defects. Consequently, their motions should be denied.

---

[1]    Unless otherwise indicated, all defined terms shall have the same meaning as set forth in Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff, dated May 26, 2020. [ECF No. 34] ("Pension Trust Fund's Opposition").

## II.     ARGUMENT

### A.     The Pension Trust Fund Is the "Most Adequate Plaintiff"

With a recoverable loss of approximately $136,074, the Pension Trust Fund has the largest financial interest of any qualified lead plaintiff movant.  In addition to its substantial financial interest, the Pension Trust Fund readily satisfies the typicality and adequacy requirements of Rule 23, and as a result, should be appointed Lead Plaintiff.  *See Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN, 2005 WL 8154797, at *4 (S.D. Fla. June 16, 2005).

To rebut the presumption afforded to the Pension Trust Fund, the PSLRA requires proof of inadequacy, atypicality, or that the Pension Trust Fund is subject to a unique defense.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Ferrari v. Impath, Inc*., No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *6 (S.D.N.Y. July 20, 2004) (rejecting challenge where there was "no evidence that would corroborate [the challenger's] theory here, which appears to rely solely on innuendo and inferences rather than established fact").[2]  Here, the only attempt at challenging the Pension Trust Fund's appointment is a vague and unsupported contention by the Individual Investors Group that the Pension Trust Fund allegedly had "access to information that was not generally available to the rest of the Class, including from its lobbying arm (the Teamsters Union of North America)[3], which had access to top legislators in the U.S. Government with specialized knowledge of the

---

[2]   Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

[3]   While the Individual Investors Group calls the union the "Teamsters Union of North America," [ECF No. 38 at 10], the union is actually known as the International Brotherhood of Teamsters ("Teamsters").  *See* https://teamster.org/about.

implications of Covid-19." ECF No. 38, at 10. This speculative attempt to rebut the presumption fails.

The first problem with this argument is that it improperly conflates the identity of three distinct entities: (i) the Teamsters; (ii) the local affiliated unions (Nos. 175 and 505); and (iii) the Pension Trust Fund. The Pension Trust Fund is the lead plaintiff movant here: a singular entity, a multi-employer pension plan, with no parent, no subsidiaries, and no affiliation with the Teamsters (or any lobbying arm of the Teamsters). *See Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB), 2019 WL 1450271, *8-9 (D. Conn. Apr. 2, 2019) (rejecting similar attack improperly conflating pension fund with the Teamsters union). Because the Pension Trust Fund is a wholly distinct entity, any information (if any) that the lobbying arm of a *separate and unaffiliated* entity might have had should not undermine the Pension Trust Fund's qualifications to serve as lead plaintiff. *Id.*; *see also Mullins v. AZZ, Inc.*, No. 4:18-CV-025-Y, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018) (rejecting similar challenge that "wholly fail[ed] to demonstrate that the Plan, as opposed to the local union, suffers from these alleged conflicts"); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (holding that "any conflict of interest must be grounded in fact to rebut the presumption of the most adequate lead plaintiff" and rejecting "improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events [that] is far too attenuated to rebut the statutory presumption").

Second, the Individual Investors Group does not articulate what "information" the Pension Trust Fund supposedly acquired, or why, if it had acquired adverse inside information regarding "the implications of Covid-19," the Pension Trust Fund would have ***purchased*** Norwegian

- 3 -

securities during the Class Period as opposed to selling them.  *See* ECF No. 38, at 10.  As such, this argument "is entirely speculative and is far from the proof required to rebut the presumption that the Pension Funds are the most adequate lead plaintiff."  *Labul*, 2019 WL 1450271, at *9; *see Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration[.]"); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").

Third, as the Individual Investors Group's counsel is well aware, as it currently represents similar union pension funds, including Teamsters funds, pursuant to ERISA, the Pension Trust Fund's assets are invested and prudently managed by outside investment managers.[4]  In other words, decisions of which securities to invest in are not made by the Pension Trust Fund.  *See generally Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 WL 13791788, at *7 (S.D.N.Y. Dec. 8, 2015) ("I will not impute the conduct of Guevoura's investment advisor to its client.  There is no evidence that Guevoura had anything to do with the matter being investigated by the AFM, which was eventually settled.  The AFM matter is irrelevant to the motion before the court.").

---

[4]  Moreover, ERISA establishes that the Pension Trust Fund's sponsors (here their boards of trustees), operate as fiduciaries, with the responsibility of running the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses.  *See* 29 U.S.C. §1104(a).  "Thus, the fiduciaries are obligated to act in the interest of the fund participants and beneficiaries—whose interests here align with those of the other putative class members—and would violate that obligation and open themselves up to liability if they acted in the interest of another party, for instance, the Teamsters."  *Labul*, WL 1450271, at *8.

- 4 -

Thus, even assuming, *arguendo*, that the Pension Trust Fund had access to non-public information regarding Covid-19 (it did not), it had no involvement in the underlying decision to purchase any Norwegian securities during the Class Period.

In short, the Individual Investors Group has failed to provide any facts to support their speculative claim that the Pension Trust Fund received, much less benefitted from, any alleged "access to information" that the Teamsters may (or may not) have had, let alone anything that might rise to a level that could be disqualifying under the PSLRA's exacting standard.  As such, the Individual Investors Group's "conclusory assertions of inadequacy, without specific evidentiary support for the existence of an actual or potential conflict of interest or a unique defense to which the lead plaintiff would be subject, are insufficient." *Labul*, 2019 WL 1450271, at *9.

Because the presumption in the Pension Trust Fund's favor has not been rebutted, the Court should appoint the Pension Trust Fund as Lead Plaintiff and approve its selection of counsel. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing institutional investor as lead plaintiff even though it did not initially claim the largest financial interest, but was the first movant "that satisfie[d] both prongs of Rule 23").

### B.       The Individual Investors Group Cannot Be Appointed

While the Individual Investors Group purports to claim the largest financial interest among the competing movants, it does so only by ignoring the stack of reasons weighing against its appointment.  First, the Individual Investors Group's proffered trading records show that William C. Perry, III has no financial interest at all in the relief sought by the class, as he completely closed out of his position in Norwegian options by March 9, 2020, days before the first alleged curative

- 5 -

disclosure. As a result, Perry cannot establish the essential element of loss causation. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("[T]hose class members who sold their . . . common stock before . . . the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud."); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Consequently, Perry's claimed losses – which account for nearly three-quarters of the Individual Investors Group's aggregated losses – are trading losses, not recoverable fraud losses, and should be excluded in calculating the Individual Investors Group's financial interest. *See, e.g.*, *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *4 (N.D. Ill. June 26, 2018) (excluding lead plaintiff movant's losses that were incurred prior to the alleged corrective disclosure dates).

Second, Perry did not purchase any "securities" issued by Norwegian during the Class Period; rather, he transacted exclusively in Norwegian put option contracts, which, by definition, are not "securities" issued by Norwegian. *See* ECF No. 34, at 9-10. Courts around the country have held that investors who transacted solely in options are subject to unique defenses that render them atypical to represent the class, as well as standing challenges. *See id.*; *see also Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061(RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) ("As an options holder, [movant] is potentially subject to unique defenses irrelevant to regular stock purchasers in the class, as well as standing challenges.").

Third, Perry's criminal history undermines his ability to serve as a fiduciary on behalf of the class. Perry pled guilty and has been convicted of knowingly making bank deposits of under $10,000 each in order to evade the currency reporting requirement and potential investigation by

the Internal Revenue Service.  *See* ECF No. 34, at 11-13.  Evidence of such a crime subjects Perry to unique defenses and should preclude the Court's consideration of Perry's (and the Individual Investors Group's) application for appointment as lead plaintiff in this case.  *See Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005) (disqualifying proposed group as class representative whose member with the largest financial interest had been convicted of providing false information to a financial institution).

Finally, although the PSLRA explicitly permits a "group of persons" to serve as lead plaintiff, *see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), "a group is not entitled to presumptive lead plaintiff status unless it otherwise satisfies Rule 23, which in turn requires that it be able to fairly and adequately protect the interests of the class[,]" *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).  It is self-evident that the Individual Investors Group is an "artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff, which can then select the equally artificial grouping of counsel as lead counsel." *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001).

Although the group's Joint Declaration notes that the members discussed their "losses arising from Defendants' misconduct, the claims alleged against Defendants, and jointly prosecuting the case," prior to seeking joint appointment as Lead Plaintiff [ECF No. 24-4, at ¶9], the only plausible explanation for how and why a retired naval officer living in Honolulu, Hawaii, and a retired account executive from Orange Beach, Alabama (each represented by separate counsel) decided to seek joint appointment as Lead Plaintiff in this action, despite no prior connection, is a marriage of convenience to serve the interests of their counsel to gain control of the litigation.  *See, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622-23 (S.D.N.Y. 2015)

- 7 -

(collecting cases); *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (disapproving aggregation of unrelated persons who join together in the hope of "becoming the biggest loser for PSLRA purposes"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (finding "aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff").

In sum, the Individual Investors Group's motion should be rejected in its entirety.

### C.      Atachbarian Does Not Qualify for the Lead Plaintiff Presumption and, in Any Event, Does Not Satisfy Rule 23

The only other movant vying for appointment is Atachbarian.  As an initial matter, Atachbarian's alleged financial interest (arising from his nominal stock holdings) is smaller than the Pension Trust Fund's; thus, his motion may only be properly considered if there is proof rebutting the presumption in favor of the Pension Trust Fund (there is none).[5]  Moreover, even if the Court was to entertain Atachbarian's motion, like Perry, Atachbarian transacted in put options, which render him atypical and subject to unique defenses.  Further, Atachbarian's  argument in support of a subclass of options purchasers falls flat because options and other equity-type securities of a particular issuer are derivative securities of common stock, whose interests are sufficiently protected by common stock purchasers.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476-77 (S.D.N.Y. 2011) (rejecting argument that options purchaser needed to be appointed to protect the interests of the class); *see also* ECF No. 34, at 10 n.3 (citing cases).

---

[5]   While the Pension Trust Fund's Opposition mistakenly contended that Atachbarian alleged losses were attributable only to options purchases [ECF No. 34, at n.5], Atachbarian purchased 2,000 shares of Norwegian stock, and suffered an alleged $71,350 in connection therewith [*see* ECF No. 14-1].  Regardless, his alleged loss on those shares is smaller than the Pension Trust Fund's loss.

Finally, Atachbarian's attempt at redefining the class for which he seeks appointment must be disregarded.  *Compare* ECF No. 13, at 1 (originally seeking appointment as lead plaintiff of the consolidated action or, alternatively, as lead plaintiff of an options class) *with* ECF No. 36, at 1-2 (abandoning shareholder class, now claiming that creating a class of options traders and common stock purchasers would "caus[] a conflict," such that an options-only class should be created and that "Atachbarian is the only movant who qualifies to act as the lead plaintiff for the Options class").  Such maneuvering must not be countenanced.

In *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532 (N.D. Ohio 2001), a movant, like Atachbarian here, tried to "simply define the class they seek to represent."  *Id*. at 536.  In denying the request, the court recognized that the movant was "not the largest stakeholder in the [case], and, by its own definition, it is not typical of the entire class of plaintiffs.  Metaphorically speaking, the [movants] are simply trying to shrink the kingdom until they are king."  *Id*. (concluding that movant "should [not] be lead plaintiff for all or part of this matter").  Atachbarian's motion should not be considered.

## III.    CONCLUSION

For all of the foregoing reasons, the Pension Trust Fund submits that it is the only lead plaintiff movant that meets the "most adequate plaintiff" requirements of the PSLRA.  The Pension Trust Fund should be appointed as Lead Plaintiff and its choice of counsel approved.  All other motions should be denied.

DATED:  June 2, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
JACK REISE
Florida Bar No. 058149
SABRINA E. TIRABASSI
Florida Bar No. 0025521

*s/ Sabrina E. Tirabassi*
SABRINA E. TIRABASSI

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
stirabassi@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

CICCARELLO DEL GIUDICE & LAFON
MICHAEL J. DEL GIUDICE
1219 Virginia Street, East, Suite 100
Charleston, WV  25301
Telephone:  304/343-4440
304/343-4464 (fax)

Additional Counsel for [Proposed] Lead Plaintiff

- 11 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*s/ Sabrina E. Tirabassi*

SABRINA E. TIRABASSI
(Florida Bar No. 0025521)

- 11 -