UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-21107-CIV-SCOLA
(Consolidated with No. 20-21386 and 20-21685)

| | |
|---|---|
| ERIC DOUGLAS, Individually and on Behalf of All Others Similarly Situated, | CLASS ACTION |
| Plaintiff, | |
| vs. | |
| NORWEGIAN CRUISE LINES, FRANK J. DEL RIO, and MARK A. KEMPA, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Tracy A. Nichols, Esq.
Alex M. Gonzalez, Esq.
Louise McAlpin, Esq.
Allison Kernisky, Esq.
Michael W. Glenn, Esq.
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, FL 33131

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION .......................................................................................................... 1

I.     DEFENDANTS HAD NO DUTY TO DISCLOSE ALLEGED MISLEADING
SALES PRACTICES......................................................................................... 2

       A.     COVID-19-Related Statements .................................................... 4

       B.     Marketing Statements .................................................................. 5

       C.     Code Statements........................................................................... 6

II.     ASPIRATIONAL CODE STATEMENTS ARE NOT ACTIONABLE
BECAUSE THEY MAKE NO REPRESENTATION ABOUT SALES
PRACTICES NOR DO THEY GUARANTEE COMPLIANCE...................... 7

III.     DEFENDANTS' STATEMENTS ARE NONACTIONABLE PUFFERY ....... 8

IV.     NO SHOWING OF A STRONG INFERENCE OF SCIENTER...................... 9

       A.     Plaintiff Cannot Rely on the Core Operations Doctrine as a Basis for
Scienter ...................................................................................... 9

       B.     Plaintiff Cannot Impute Knowledge of Other Officers to Individual
Defendants ............................................................................... 11

       C.     Alleged Concealment By Others And Mr. Becker's Departure Do
Not Show Scienter Of Individual Defendants ....................... 12

       D.     Norwegian's Code of Conduct Is Not Indicative of Scienter ............. 13

       E.     Corporate Scienter Imputed Only When Officer Who Makes Statement
Knows it is False ..................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. PJT Partners Inc.*,
2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)..............................................................................7

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)......................................................................................12

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................................................12

*Carvelli v. Ocwen Fin. Corp.*,
2018 WL 4941110 (S.D. Fla. Apr. 30, 2018) .........................................................................8, 9

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) .............................................................................................5, 8

*In re CenturyLink Sales Practices & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019)..............................................................................8, 11, 13

*Constr. Laborers Pension Tr. for So. Cal. v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020).......................................................................................7

*Durgin v. Mon*,
415 F. App'x 161 (11th Cir. 2011) ..........................................................................................11

*Epstein v. World Acceptance Corp.*,
203 F. Supp. 3d 655 (D.S.C. 2016)..........................................................................................11

*In re Faro Techs. Sec. Litig.*,
534 F. Supp. 2d 1248 (M.D. Fla. 2007)....................................................................................14

*FindWhat Inv'r Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2010) .........................................................................................3, 5, 6

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)............................................................................6

*Grand Lodge of Pa. v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008)....................................................................................14

*Halford v. AtriCure, Inc.*,
2010 WL 8973625 (S.D. Ohio Mar. 29, 2010)...........................................................................6

ii

*Harris v. Ivax Corp.*,
     182 F.3d 799 (11th Cir. 1999) ................................................................................8

*Henningsen v. ADT Corp.*,
     161 F. Supp. 3d 1161 (S.D. Fla. 2015) ...................................................................3

*Holwill v. AbbVie Inc.*,
     2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) .......................................................6, 13

*IBEW Local 595 Pension & Money Purch. Pension Plans v. ADT Corp.*,
     660 F. App'x 850 (11th Cir. 2016)……………………………………………………3, 8

*In re Home Loan Serv. Sols., Ltd. Sec. Litig.*,
     2016 WL 10592320 (S.D. Fla. June 6, 2016) ........................................................13

*ITT Educ. Servs., Inc. Sec. & S'holder Litig.*,
     859 F. Supp. 2d 572 (S.D.N.Y. 2012) ......................................................................3

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
     2011 WL 12855820 (N.D. Ala. June 7, 2011) ........................................................12

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ............................................3

*Maz Partners LP v. First Choice Healthcare Solutions, Inc.*,
     2020 WL 1072582 (M.D. Fla. Feb. 14, 2020) ......................................................6, 14

*Michigan Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
     2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) ..........................................................4

*Mizzaro v. Home Depot, Inc.*,
     544 F.3d 1230 (11th Cir. 2008) ...................................................................9, 13, 14

*Mulvaney v. GEO Group, Inc.*,
     237 F. Supp. 3d 1308 (S.D. Fla. 2017) ..................................................................10

*In re Nature's Sunshine Prods. Sec. Litig.*,
     486 F. Supp. 2d 1301 (D. Utah 2007) ....................................................................12

*Oklahoma Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
     444 F. Supp. 3d 550 (S.D.N.Y. 2020) .....................................................................7

*In re OSG Sec. Litig.*,
     12 F. Supp. 3d 622 (S.D.N.Y. 2014) ......................................................................13

*Phila. Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*,
     572 F. App'x 713 (11th Cir. 2014) ...........................................................................8

*In re Plains All Am. Pipeline, LP Sec. Litig.*,
     307 F. Supp. 3d 583 (S.D. Tex. 2018) ......................................................................8

*Plymouth Cty. Ret. Sys. v. Carter's Inc.*,
 2011 WL 13124501 (N.D. Ga. Mar. 17, 2011)........................................................................10

*In re Providian Fin. Corp. Sec. Litig.*,
 152 F. Supp. 2d 814 (E.D. Pa. 2001) .....................................................................................6

*Robb v. Fitbit Inc.*,
 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ...........................................................................11

*Ross v. Career Educ. Corp.*,
 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)...........................................................................13

*In re Sadia, S.A. Sec. Litig.*,
 643 F. Supp. 2d 521 (S.D.N.Y. 2009)......................................................................................13

*Schiro v. Cemex, S.A.B. de C.V.*,
 396 F. Supp. 3d 283 (S.D.N.Y. 2019)......................................................................................7

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
 405 F. App'x 384 (11th Cir. 2010) ..........................................................................................14

*Singh v. Cigna Corp.*,
 918 F.3d 57 (2d Cir. 2019).......................................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
 551 U.S. 308 (2007)..............................................................................................................9, 11

*In re Tenaris S.A. Sec. Litig.*,
 2020 WL 6018919 (E.D.N.Y. Oct. 9, 2020).............................................................................7

*Thorpe v. Walter Inv. Mgmt. Corp.*,
 111 F. Supp. 3d 1336 (S.D. Fla. 2015) ...................................................................................10

*In re Toyota Motor Corp. Sec. Litig.*,
 2011 WL 2675395 (C.D. Cal. July 7, 2011).............................................................................11

**Statutes**

15 U.S.C. §78u-4(b)(1) ...................................................................................................................1

## INTRODUCTION

This is a serious claim of securities fraud asserted against Norwegian,[1] its CEO and CFO requiring Plaintiff to plead particular facts creating a strong inference that the Defendants knowingly made false statements in connection with the sale of Norwegian stock.

As noted in the Motion, the most glaring deficiency in the AC is that Plaintiff has not pled one fact showing that Mr. Del Rio or Mr. Kempa even knew about the alleged Misleading Sales Campaign. Plaintiff's Memorandum in Opposition to the Motion (the "Opposition") does not remedy that fatal flaw.  ECF No. 68.  In fact, other than in the caption, the Opposition does not mention Mr. Kempa at all, much less discuss what facts are included in the AC to show he acted with scienter.  The three innocuous references to Mr. Del Rio in the Opposition and passing references to him in the AC fare no better.  Even if accepted as true, Plaintiff's theory of an alleged "top down" Misleading Sales Campaign supposedly carried out by a sales manager with the purported acquiescence of non-party "high level management" is insufficient to state a securities fraud claim against the Defendants because it does not, as required by the Eleventh Circuit, demonstrate scienter by the relevant "top" executives—Mr. Del Rio or Mr. Kempa who made the Challenged Statements.

Plaintiff also resorts to improper broad brush generalities to try to state its claims, rather than the appropriate standards mandated by the PSLRA—reliance on the actual content of each Challenged Statement and the specific facts that supposedly show how each was misleading.  *See* 15 U.S.C. §78u-4(b)(1).  Instead of identifying the reasons why each Challenged Statement is misleading, Plaintiff makes the sweeping generalization that all 23 of them are actionable for the same reason—the omission of the alleged Misleading Sales Campaign.

---

[1] All defined terms have the same definitions as set forth in Defendants' Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law (the "Motion").  ECF No. 60.

1

But there is no general duty imposed on a public company to disclose all material facts. Nor is a company required to make disparaging remarks about the performance of its employees or accuse itself of uncharged wrongdoing.  Instead, to plead a material omission, Plaintiff must point to a material statement Defendants actually made—viewed in the context of all other disclosed information—that was rendered materially misleading because it did not disclose the alleged Misleading Sales Campaign.  To meet that pleading requirement, Plaintiff would have to identify a statement by the Defendants touting the quality of its alleged "call center" staff or the content of their talking points to guests.  There is no such statement in the AC.

Lacking a foundation on which to develop a duty to disclose, Plaintiff instead tries to base its fraud claim on non-actionable puffery, opinions, forward-looking statements and factual statements that Plaintiff admits are true.  But such nonactionable statements, many of which are immaterial as a matter of law, cannot form the basis for a securities fraud claim.

## I.   DEFENDANTS HAD NO DUTY TO DISCLOSE ALLEGED MISLEADING SALES PRACTICES

Plaintiff's claim of securities fraud is premised solely on a material omission theory— otherwise truthful statements[2] allegedly were misleading because they omitted the "material fact" of the alleged Misleading Sales Practices.[3]  In other words, Plaintiff contends that because the

---

[2] Plaintiff admits that it is not contesting that any of the Challenged Statements are affirmatively false.  *See* Opp. 9 n.6.  It concedes that the Company's 2019 financial results (AC ¶¶90, 91) were not materially misstated.  *Id.*  It also does not contest that the Company experienced a short-term improvement in its bookings or that Norwegian implemented proactive measures, including onboard embarkation screening protocols, as represented (AC ¶¶ 91, 95, 96, 97, 98, 101).

[3] As explained in the Motion (10-11), this omission, upon which Plaintiff's entire case is premised, is not substantiated with the required specific facts.  Plaintiff does not dispute that the Confidential Witness admitted that use of the One Liners was not mandatory and that he or she never used them. Plaintiff also has failed to identify a single NCL employee who did use the One Liners.  Plaintiff's best "evidence" is internet postings from two anonymous customers complaining about NCL's sales tactics.  Yet there is no link tying the complained-of sales tactics to the Class Period, the Company's financials or the 5-day Booking News.  Lacking any facts to make a plausible case that the One Liners were used and impacted the reported metrics, Plaintiff instead argues that these

2

undisclosed One Liners were allegedly "material," there is a duty to disclose them. Opp. 10. That is not the law—materiality alone does not create a duty to disclose. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Under federal securities law, disclosure is required "only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Id.* (quotation marks and ellipse omitted). Nor do federal securities laws create an affirmative duty for a company to accuse itself of uncharged wrongdoing or to disclose allegedly aggressive or inappropriate sales practices.[4] Thus, there was no independent duty, as Plaintiff claims, requiring disclosure of the alleged Misleading Sales Campaign.

Moreover, simply by revealing a fact about it operations, a duty did not arise for Norwegian to disclose everything investors might find interesting. *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2010). Rather, it had "a duty to neutralize only the natural and normal implication of its statements." *Id.* (internal quotation marks omitted).

Plaintiff contends that "Defendants put the [alleged Misleading Sales Campaign] in play" and triggered a duty to disclose based on three sets of statements:

> (1) voluntarily speaking about the Company's handling of, and impact from, the coronavirus ["COVID-19-related Statements"](¶¶89-93); boasting about Norwegian's marketing strategies and sales force ["Marketing Statements"] (¶¶93, 99-100, 106-107); and representing that all employees adhered to the Code ["Code Statements"] (¶¶111-113).

---

are factual issues which should be resolved later. Opp. 8. That is not the law. Plaintiff is obligated to plead facts to support a plausible theory of widespread use of the One Liners, not isolated instances of alleged inappropriate communications with customers. *See, e.g., ITT Educ. Servs., Inc. Sec. & S'holder Litig.*, 859 F. Supp. 2d 572, 581 (S.D.N.Y. 2012) (holding that to show college's statements about its commitment to legal compliance were misleading, plaintiff had to allege "widespread problems of noncompliance," not just isolated instances).

[4] *See Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1197 (S.D. Fla. 2015), *aff'd sub nom. IBEW Local 595 Pension & Money Purch. Pension Plans v. ADT Corp.*, 660 F. App'x 850 (11th Cir. 2016) ("[T]he law does not impose a duty to disclose every slip-up and misstep . . . within a touted sales program."); *ITT Educ. Servs.,* 859 F. Supp. 2d at 579 (recognizing that company had no independent "duty to disclose its hyper-aggressive sales tactics and quota system or to characterize its business model and educational programs in a pejorative manner.") (quotation marks omitted).

Opp. 11. Ignoring the PSLRA requirement that facts must be alleged to show why *each* statement is misleading, Plaintiff attempts to paint with a broad brush by glossing over the actual content of each statement and making the conclusory assertion that *all* of the Challenged Statements are misleading because they omitted disclosure about the alleged used of the One Liners. *Id.* This impermissible attempt is understandable given that the "natural and normal implications" of each Challenged Statement shows that none of them are misleading or would require disclosure of the alleged Misleading Sales Campaign as discussed below.[5]

A.      COVID-19-Related Statements

The COVID-19-related Statements primarily address the proactive efforts taken by Norwegian to ensure that its track record of having no COVID-19 cases on its ships remained intact. None of these statements even reference "call centers" or sales practices in general,[6] much less include a discussion of practices used at the alleged "call centers" to overcome customer concerns about cruising during the unfolding and expanding worldwide pandemic. The disclosure of the newly-added shipboard safety measures certainly did not create the misimpression that despite the COVID-19 outbreak, "all was well within every component of the [C]ompany that

---

[5] This is apparently why Plaintiff argues the Court should "ignore" Exhibit 7 to the Motion (Opp. 16 n.15), which cites the full text of each of the Challenged Statements in context. But contrary to Plaintiff's argument, this Court can, and should, consider Exhibit 7 which is simply a "demonstrative exhibit[] intended as an aid to the Court." *See Michigan Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *3 (M.D. Fla. Mar. 29, 2019) (denying motion to strike "chart listing the challenged statements in context and the reason(s) each statement is nonactionable" in granting motion to dismiss).

[6] *See, e.g.,* AC ¶91 (addressing "proactive measures" to protect health and safety of guests and crew and cancellation of voyages in Asia); *id.* ¶92 (Company aims to be "transparent" in responding to analyst questions on Conference Call); *id.* ¶93 ("strength and resilience" of business model is based on "go-to-market strategy of emphasizing value over price as the main lever to drive demand"); *id.* ¶96 ("silver linings" from the 5-Day Booking News); *id.* ¶97 (Company "is working tirelessly to do what is right . . . while protecting the equity of [its] brands").

4

could possibly affect revenue in the future."[7]  *See FindWhat*, 658 F.3d at 1306.  Thus, no "natural" or "normal" implication of the COVID-19-related Statements had to be neutralized with a description of how alleged "call center" employees were selling cruises or avoiding cancellations.  *See id.*  As such these statements do not impose a basis for a duty to disclose.[8]

B.      Marketing Statements

The only statement Plaintiff can point to that even mentions "call centers" is the innocuous representation that Norwegian "utilize[s] call centers to drive high potential targeted customers and increase the effectiveness of [its] marketing programs."  *See* AC ¶107.  Neither that statement, nor the other Marketing Statements that reference the Company's value-centric marketing strategies,[9] "tout" the quality or oversight of the communications between "call center" staff and

---

[7] On the contrary, Defendants did not downplay the impacts from the COVID-19 outbreak, disclosing: the ramifications to the Company had been "swift and severe"; the likely failure to meet previously set earnings targets; a then-known direct impact from the virus of $0.75 per share, the 5-day Booking News was not "a definitive trend," and given the uncertainty surrounding the outbreak, that it was too early for the Company to quantify additional impacts from the virus. Motion Ex. 3 at 3, 5, 8, 12.  Thus, when the Challenged Statements are viewed in context, it is clear that they do not create any misimpression about the impacts of the COVID-19 outbreak on the Company.  *See Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1322 (11th Cir. 2019) (holding that challenged statement not misleading by omission when considered in proper context).

[8] Nor did the reporting of the Company's 2019 financial results or 5-Day Booking News trigger a duty to disclose.  Although Plaintiff concedes that these financial metrics were accurately reported, it nevertheless contends they are materially misleading.  Many courts, including the Eleventh Circuit, have rejected such a theory as it would improperly subject every company that accurately reported financial results or metrics to securities fraud.  *See, e.g., FindWhat*, 658 F.3d at 1306 (holding that company which accurately reported revenue growth had no "concomitant obligation to reveal a detailed picture of every aspect of the company's operations that could possibly bear on future revenue.").  Plaintiff is also wrong that this *FindWhat* holding is distinguishable because that case involved the reporting of revenues rather than the 5-day Booking News, "which [was] driven by the Company's marketing and sales machine." Opp. 11 n.9.  This is a distinction without a difference.  Like the 5-day Booking News, the revenue in *FindWhat* (as well as that derived by most companies) was also driven by sales and marketing efforts.

[9] *See, e.g.,* AC ¶93 ("go-to-market strategy of emphasizing value over price"); *id.* ¶99 ("proven go-to-market strategy of focusing on value to consumers over using low price . . . to stimulate demand"); *id.* ¶100 ("go-to-market strategy" of "market[ing] value over price").

guests.[10]   No reasonable person reading the Marketing Statements would assume the Company was guaranteeing that its alleged "call center" staff—who allegedly make thousands of sales calls a day—was free of all problems.[11]   The Marketing Statements did not create any misimpression without the disclosure of additional information.  Thus, they are not misleading as a matter of law.

C.      Code Statements

Plaintiff also contends a duty to disclose arose from Norwegian's purported representation "that all employees adhered to the Code."  Opp. 11 (*citing* AC ¶¶111-113).   But the cited paragraphs from the AC merely recite the Code provisions stating that employees are "expected" to both observe the highest standards of ethics and adhere to the Code.  Plaintiff cannot point to a single statement in the Code where Norwegian "represented" that all employees adhere to their ethical obligations at all times.  Nor can Plaintiff identify any statement any Defendant made to that effect.  As such, nothing in the Code triggers a duty to disclose.

---

[10] *See FindWhat*, 658 F.3d at 1298 (holding that statements touting monitoring and enforcement systems for advertising traffic were misleading by omission because they naturally implied that the company "had systems in place that would detect and remove" anyone engaged in fraudulent click fraud, when in fact, it did not).  Rather than demonstrating that the Challenged Statements are actionable, as Plaintiff contends (Opp. 11 n.9), this *FindWhat* holding demonstrates why statements that are devoid of any representation or guarantee regarding the monitoring or enforcement of call center activities are *not* misleading by omission.

[11] The cases cited in the Opposition (11-12) are distinguishable because in those cases, unlike here, the challenged statements affirmatively touted various subjects or expressly represented the lack of wrongdoing when in fact, misconduct relating to those subjects existed, but was not disclosed. *See, e.g., In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *9 (M.D. Ga. Mar. 23, 2018) (touting strengths of program despite known problems with it); *Maz Partners LP v. First Choice Healthcare Solutions, Inc.,* 2020 WL 1072582, at *5 (M.D. Fla. Feb. 14, 2020) (certification representing full disclosure of any fraud was misleading because it failed to disclose stock manipulation scheme); *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 824 (E.D. Pa. 2001) (touting company's "customer focused approach" as source of its financial success, but failing to disclose fraudulent business practices that contributed to revenue); *Halford v. AtriCure, Inc.*, 2010 WL 8973625, at *11 (S.D. Ohio Mar. 29, 2010) (statements touting legality of company's off-label marketing practices were misleading for failure to disclose that such practices potentially violated applicable laws); *Holwill v. AbbVie Inc.*, 2020 WL 5235005, at *3 (N.D. Ill. Sept. 1, 2020) (statements touting company's marketing practices and attributing its success to them were actionable because they failed to disclose unlawful kickback scheme).

II.    **ASPIRATIONAL CODE STATEMENTS ARE NOT ACTIONABLE BECAUSE THEY MAKE NO REPRESENTATION ABOUT SALES PRACTICES NOR DO THEY GUARANTEE COMPLIANCE**

Plaintiff also asserts that the vague, aspirational Code Statements are actionable because they are directly at odds with the alleged Misleading Sales Practice.  Courts recognize there is a "difference between statements in a code of conduct that are non-actionable puffery and promises that might be material statements of fact."[12]  Most courts find that statements such as those in Norwegian's Code that "amount to general declarations about the importance of acting lawfully and with integrity" fall squarely into the category of immaterial puffery.[13]  Only in "rare circumstances," involving a guarantee of compliance with the code or where the code contains a factual statement that is directly at odds with the fraudulent conduct, have courts permitted claims based on such statements.[14]  Neither of these rare circumstances is present here.

Defendants never guaranteed that all 36,000 employees abided by the Code at all times. Nor is there anything in the Code that addresses sales practices, much less makes a statement of historical fact that Norwegian's sales practices always comply with the aspirational standards of the Code.  As such, the cases cited by Plaintiff are inapposite.[15]

---

[12] *See Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *5 (S.D.N.Y. Sept. 8, 2017); *Constr. Laborers Pension Tr. for So. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 532 (S.D.N.Y. 2020) (recognizing statements in code of conduct are typically immaterial puffery as opposed to statements of fact and are "generally incapable of forming the basis for a Section 10(b) claim.").

[13] *See Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (general statements about reputation, integrity and ethical compliance are puffery); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019) (statement that company was committed to conducting business with "transparency and integrity" is puffery); *Barrett*, 2017 WL 3995606, at *6 n.6 ("The fact that a code of conduct prohibits certain conduct by employees is not a factual representation that those policies will always be followed by all employees or that they are 100% effective.").

[14] *See, e.g., Oklahoma Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 560 (S.D.N.Y. 2020) (recognizing alleged misrepresentations contained in a code of ethics survive a motion to dismiss "only in rare circumstances.").

[15] *See In re Tenaris S.A. Sec. Litig.*, 2020 WL 6018919, at *7 (E.D.N.Y. Oct. 9, 2020) (holding code of ethics which expected employees to comply with laws was puffery; however, separate code of conduct arising out of SEC deferred prosecution agreement for past bribery was actionable

7

III.   **DEFENDANTS' STATEMENTS ARE NONACTIONABLE PUFFERY[16]**

In the Motion, Defendants specifically identified the many Challenged Statements that are nonactionable puffery—generalized, non-verifiable statements that no reasonable investor would rely on when viewed in context.[17]   Again sidestepping any analysis of the actual content of the Challenged Statements, Plaintiff instead argues that it is inappropriate for this Court to decide whether or not the identified statements are material at the motion to dismiss stage.  Opp. 19-20. However, the Eleventh Circuit has repeatedly upheld dismissals of securities fraud cases as a matter of law because they were founded on mere puffery.[18]

---

because its anti-bribery provision directly contradicted the alleged fraud); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 728 (D. Minn. 2019) (finding factual Code statements which "concretely promised" that company "would never . . . engage in unethical or deceptive sales practices" or "place or record an order for our products and services for a customer without that customer's authorization" were actionable because directly contradictory to alleged deceptive sales practices).  Moreover, contrary to Plaintiff's characterization, the certification of compliance within a code of ethics is not a determining factor in whether a code statement is immaterial puffery. *See, e.g., In re Plains All Am. Pipeline, LP Sec. Litig.*, 307 F. Supp. 3d 583, 626 (S.D. Tex. 2018) (statements in ethical code to which employees certified compliance were non-actionable puffery).

[16] Several other Challenged Statements are also unambiguously forward-looking statements of predictions, projections or plans, accompanied by meaningful cautionary language, and therefore are expressly protected by the PSLRA's safe harbor. *See* Motion 19-21.  The Opposition overlooks that the Eleventh Circuit takes an expansive approach to the statutory safe harbor and routinely holds that where a statement is forward-looking when read as a whole, the inclusion of historical or contemporaneous material facts does not remove it from the safe harbor. *See Carvelli*, 934 F.3d at 1328–29; *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999).

[17] These include, among others, statements about the "strength and resilience" of Norwegian's business model (AC ¶ 93); that the Company "aim[ed] to be as transparent as possible" (*id.* ¶ 92); that it was "working tirelessly to do what is right" while "protecting the equity of our brands" (*id.* ¶ 97); and that "we're good marketers" who "know how to market our product" (*id.* ¶ 100).

[18] *See Carvelli*, 934 F.3d at 1321 (affirming dismissal and concluding defendant's "proclamations that it was devoting 'substantial resources' to its problems, with 'improved results,' as well as its boasts that it was taking a 'leading role' and making 'progress' toward compliance" were immaterial puffery); *ADT Corp.*, 660 F. App'x at 857 (determining statements describing company's repurchase plan as "thoughtful," "effective," and "optimal" were nonactionable puffery); *Phila. Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th Cir. 2014) (holding statements about "rigor" of the company's processes, "'efficiency' and 'accuracy' of its operations" and its "'effective' staff training" are immaterial puffery).  The stock price drop following the publication of the news articles does not, as Plaintiff suggests, somehow

8

## IV.    NO SHOWING OF A STRONG INFERENCE OF SCIENTER

Plaintiff does not allege a single fact to show that either Mr. Del Rio or Mr. Kempa knew about the alleged Misleading Sales Practices before the publication of the new articles.  Not only are these Individual Defendants not mentioned in the news articles, but Mr. Kempa is not addressed at all in the Opposition and the only reference to Mr. Del Rio is that NCL's President Mr. Sommer reports to him.  Opp. 24, 27.  Such bare-bones pleading based on a Confidential Witness who says nothing about either Individual Defendant and fails to identify a single report, meeting or conversation in which the Individual Defendants learned of the alleged Misleading Sales Campaign is insufficient to show a cogent and compelling inference of scienter.[19]

In fact the AC alleges that as soon as Defendants became aware of the One Liners through publication of the *Miami New Times* article, the Company's General Counsel instructed NCL staff to stop any use of the One Liners (if they had previously used them).  This fact, combined with the lack of any allegations showing the Individual Defendants had prior knowledge of the alleged Misleading Sales Practices, confirms that the only plausible inference is that during the Class Period Defendants were unaware of such alleged practices.

A.    Plaintiff Cannot Rely on the Core Operations Doctrine as a Basis for Scienter

Lacking any factual basis to allege that the Individual Defendants knew about the One Liners during the Class Period, Plaintiff instead asserts that the core operations doctrine bolsters

---

insulate the otherwise nonactionable puffery statements from dismissal. *See Carvelli v. Ocwen Fin. Corp.*, 2018 WL 4941110, at *2, 4 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (affirming dismissal of action founded on puffery despite 80% stock price decline).

[19] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1250-51 (11th Cir. 2008) ("[W]e indulge at least some skepticism about allegations that hinge entirely on a theory that senior management 'must have known' everything that was happening . . . . The [Complaint] must at least allege *some* facts showing how knowledge of the fraud would or should have percolated up to senior management.") (emphasis in original).

its otherwise deficient allegations because the Individual Defendants' statements showed they were closely monitoring the Company's ticket sales and cancellations in the midst of the unprecedented crisis.[20]

Plaintiff's reliance on the "core operations" doctrine is misplaced. The "Eleventh Circuit has never adopted the core operations doctrine" and the "courts analyzing the doctrine recognize that if it is relied upon, it very rarely can create a strong inference of scienter on its own." *Plymouth Cty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011). This is because "it is not automatically assumed that a corporate officer is familiar with certain facts just because these facts are important to the company's business; there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in question."[21]

Moreover, just because the Individual Defendants were familiar with the financial metrics of Norwegian's business does not mean they knew about all the underlying detail and efforts of the Company's 36,000 employees that generate those metrics. It is not plausible to expect that the CEO and CFO would be involved in developing or even knowing about the content of suggested discretionary talking points given to "call center" staff. Nor is it plausible to believe they would be privy to or monitor any of the thousands of conversations occurring between sales staff and guests. *See Mulvaney v. GEO Group, Inc.*, 237 F. Supp. 3d 1308, 1324 (S.D. Fla. 2017) (scienter not established through allegations that "address only whether information … existed, not whether

---

[20] Opp. 21-22. That the Individual Defendants faced an unprecedented global crisis undercuts any inference that they were fly-specking the content of talking points for sales staff. The Individual Defendants were overseeing Norwegian's response to a rapidly evolving crisis which compounded their responsibilities and issues to be addressed. It is not plausible that in normal times the CEO and CFO would be involved in such detail of sales staff talking points, not to mention in a time of crisis when they had to deal with many more crucial operational issues.

[21] *Id.*; *see also Thorpe v. Walter Inv. Mgmt. Corp.*, 111 F. Supp. 3d 1336, 1364 (S.D. Fla. 2015) (rejecting argument that facts critical to core operations of business are enough to satisfy the PSLRA scienter pleading requirements against officers).

and when the Individual Defendants received" it). Additionally, because Plaintiff has not pled one fact to suggest that the One Liners were actually used or had any impact on the Company's bookings or cancellations, it has not alleged that they were a part of Norwegian's core operations.[22] *See Durgin v. Mon*, 415 F. App'x 161, 165-66 (11th Cir. 2011) (rejecting scienter argument that because loan was 70% of the Company's net worth, executives "must have known" whether loan was recourse or not).

B.      Plaintiff Cannot Impute Knowledge of Other Officers to Individual Defendants

Plaintiff asserts that the "top-down nature of the deceptive sales campaign" establishes an inference of scienter, but it fails to identify the necessary facts to support such a conclusory assertion—that the allegedly Misleading Sales Campaign came down from the Individual Defendants or went up to them. Opp. 25. There is no allegation that during the Class Period either Individual Defendant was aware of: the email from Mr. Becker encouraging sales managers to "turn it up"; the One Liners; any customer complaints; or "internal directives to find out who ratted." *Id.* Nor is there any allegation that either of them attended NCL sales meetings or had any interaction whatsoever with the sales staff. Without these critical underlying facts to establish any knowledge of the alleged Misleading Sales Campaign by the Individual Defendants, Plaintiff appears to rely on the imputation of such knowledge to them from non-parties. But any such imputation theory, which is expressly contrary to the PSLRA's mandate that scienter be pled specifically as to each Defendant, must be rejected. *See Tellabs*, 551 U.S. at 326.[23]

---

[22] For this reason, the cases cited at pages 21 and 22 of the Opposition are inapplicable.

[23] Plaintiff's cases are inapposite because they either include direct evidence of defendants' knowledge of the fraud (*see, e.g., Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 670-71 (D.S.C. 2016); *CenturyLink*, 403 F. Supp. 3d at 730-31) or they involve major defects of companies' most important products which the executives would arguably know about (*see, e.g., Robb v. Fitbit Inc.*, 2017 WL 219673, at *6-7 (N.D. Cal. Jan. 19, 2017); *In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395, at *4-5 (C.D. Cal. July 7, 2011)).

C.      Alleged Concealment By Others And Mr. Becker's Departure Do Not Show Scienter Of Individual Defendants

Plaintiff also contends that scienter may be inferred from the "active concealment" of the alleged Misleading Sales Campaign.  But the only factual allegations Plaintiff points to is that Mr. Becker, not the Individual Defendants, admonished employees not to speak to reporters and an unnamed Company executive sought to find out who had "ratted."  Many companies have policies that restrict employees speaking to the press so that a consistent message can be presented to the public through a designated representative.  That is not "active concealment."  Nor are efforts to determine who spoke to the press (after the story had been published).  And of course, the fact that Plaintiff has not alleged any involvement by either Individual Defendant in the so-called "concealment" shows it is no basis to infer scienter against them.[24]

Likewise, Mr. Becker's departure from NCL does not establish Defendants' scienter because Plaintiff fails to explain how it shows that the Individual Defendants acted with the requisite state of mind.  Nothing about the departure of a non-party officer several levels below the CEO and CFO leads to an inference that they must have known about the One Liners.  *See In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) (finding that "it is hard to see how the resignation of an executive who has not been named as a defendant" could create an inference of scienter "with respect to the seven individuals who have been named.").  In fact, Plaintiff's

---

[24] Unlike here, the cases cited by Plaintiff link the defendants to the acts of concealment and are thus inapplicable. *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) (company took active steps to conceal lack of production at its facility); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,* 2011 WL 12855820, at *4 (N.D. Ala. June 7, 2011) (reporting of illegal practice halted but practice secretly continued); *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310 (D. Utah 2007) (CEO issued false management representation letter to auditor).

cases on this point all involve *named defendants* who resigned.[25] Here, the Individual Defendants did not resign and Mr. Becker is not a named defendant.

D.     Norwegian's Code of Conduct Is Not Indicative of Scienter

Plaintiff claims that when statements in the Company's Code "are directly at odds with the conduct alleged, violations of the Code support a finding of scienter." Opp. 26. But there is nothing in the Code of Conduct that addresses sales practices so it cannot be "directly at odds" with the alleged Misleading Sales Campaign. Plaintiff's inapposite cases, none of which involve the imputation of scienter to executives who were unaware of the alleged misconduct of others, fail to support a strong inference of scienter arising from the Code Statements.[26]

E.     Corporate Scienter Imputed Only When Officer Who Makes Statement Knows it is False

Plaintiff claims it has adequately alleged scienter as to other senior management (Messrs. Becker and Sommer) and that is enough to impute scienter to Norwegian. Setting aside that the AC does not include sufficient factual allegations to plead scienter as to either non-party executive, even if it had, such allegations are not enough to impute scienter to the Company. In the Eleventh Circuit, there is no corporate scienter as a matter of law unless a corporate executive (who may be a named defendant or non-party) both made the public statement *and* knew it was false.[27]

---

[25] *See In re Home Loan Servicing Sols., Ltd. Sec. Litig.*, 2016 WL 10592320, at \*7 (S.D. Fla. June 6, 2016); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632 (S.D.N.Y. 2014); *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at \*10 (N.D. Ill. Oct. 30, 2012).

[26] *See CenturyLink*, 403 F. Supp. 3d at 729-735 (scienter based on evidence defendants knew about deceptive sales practices not unknown code of conduct violations by others); *Holwill*, 2020 WL 5235005, at \*5 (scienter found as to illegal kickback scheme in violation of ethical code stating no kickbacks because defendants aware of prior settlement for same conduct); *In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 532 (S.D.N.Y. 2009) (scienter based on violation of company's currency hedging policy not code of conduct).

[27] *See Mizzaro,* 544 F.2d at 1254–55 (affirming dismissal of section 10(b) claim against corporation because complaint did not create any inference that any defendants or unnamed parties were both responsible for false statements and were aware of alleged fraud).

Here, the Challenged Statements are attributed only to the Individual Defendants, not Mr. Becker or Mr. Sommer.[28]  Thus, because Plaintiff fails to adequately plead that the Individual Defendants acted with scienter, there can be no scienter as to Norwegian.[29]

For these reasons and those set forth in the Motion, Defendants respectfully request that this Court enter an order dismissing the AC in its entirety.

Dated: November 25, 2020                              Respectfully submitted,

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel:  (305) 374-8500
Fax:  (305) 789-7799

By: /s/Tracy A. Nichols
    Tracy A. Nichols (FBN 454567)
    tracy.nichols@hklaw.com
    Alex M. Gonzalez (FBN 991200)
    alex.gonzalez@hklaw.com
    Louise McAlpin (FBN 983810)
    louise.mcalpin@hklaw.com
    Allison Kernisky (FBN 41160)
    allison.kernisky@hklaw.com
    Michael W. Glenn (FBN 1022871)
    michael.glenn@hklaw.com

*Counsel for Defendants Norwegian Cruise Line Holdings Ltd., Frank J. Del Rio, and Mark A. Kempa*

---

[28] Plaintiff's reliance on *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1262 (M.D. Fla. 2007), is misplaced. *Faro* was decided by the Middle District of Florida in 2007, before the Eleventh Circuit issued its opinion in *Mizzaro* in 2008. Plaintiff's other cases are inapposite because, unlike Plaintiff's imputation theory here, the finding of corporate scienter was based on the knowledge of the defendant CEO and/or CFO who made the allegedly false statements.  *See MAZ Partners*, 2020 WL 1072582, at *7; *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1370 (M.D. Fla. 2008).

[29] *See Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, 405 F. App'x 384, 386 (11th Cir. 2010) (affirming dismissal of claim against corporate defendant for failure to allege facts showing somebody responsible for allegedly misleading statements acted with scienter).

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2020, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/Tracy A. Nichols
Tracy A. Nichols